**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**BARNEY ASSOCIATES and its general partner, Charles D. Barnett, Gerald L. Bell, James M. Paule, and Emler A. Neuman, Jr. and Celeste M. Neuman, Defendants.**

No. 89 Civ. 3235.

United States District Court,
S.D. New York.

April 12, 1990.

Denis Collins, D'Amato & Lynch, New York City, for plaintiff.

Neal Schwarzfeld, Schwarzfeld, Ganfer & Shore, New York City, for defendants.

## OPINION AND ORDER

STANTON, District Judge.

National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"), an issuer of financial guarantee bonds, sues to enforce indemnity agreements between itself and limited partners in a tax shelter limited partnership, and to enforce its rights as subrogee on the limited partners' promissory note which it honored on their behalf. National Union issued a bond which guaranteed, to the partnership and to the bank which financed the partnership, that the limited partners would make all of the capital contributions represented by their promissory note to the partnership. The limited partners stopped making their contributions, and National Union made them on their behalf. Now it sues them for reimbursement, under the indemnity agreement they gave to National Union at the time it guaranteed their payments, and as subrogee on the note on which they defaulted.

Defendant James M. Paule moves to dismiss the complaint pursuant to Fed.R. Civ.P. 4(j) for failure to make timely service and Fed.R.Civ.P. 12(1) for lack of subject matter jurisdiction.

## BACKGROUND

National Union filed a summons and complaint in this action on May 11, 1989. (Affidavit of Denis Collins sworn to November 22, 1989 ("Collins Aff.") ¶ 2). On May 12, 1989 copies of the summons and complaint were forwarded to L & D Legal Services ("L & D") for service on Dr. Paule at the address he had listed in the indemnity agreement executed in favor of National Union in 1982. (Ibid.).

However, Dr. Paule had moved from that address in August or September 1988.

(Declaration of James M. Paule dated October 27, 1989 ¶ 3). At the time he moved, Dr. Paule arranged to have the address on his driver's license and automobile registrations changed, filed change of address forms with the post office and notified business associates, credit card companies, utilities and the telephone company of his change of address. (Ibid.). Because Dr. Paule is a medical doctor, his current address has been on file with California state agencies and the Federal Drug Enforcement Agency. (Id. ¶ 5). Moreover, National Union had been in contact with Dr. Paule's California counsel, who is counsel of record in this action, since at least 1987. (Affidavit of Neal Schwarzfeld sworn to December 1, 1989 ¶ 3, Exhibits A, B).[1]

In early June 1989 L & D informed National Union's counsel, D'Amato & Lynch, that Dr. Paule was no longer located at the address listed in the indemnity agreement. (Collins Aff. ¶ 3). Lisa Webster, a paralegal at D'Amato and Lynch, contacted International Tracing Services ("ITS"), who confirmed in a letter dated June 6, 1989 that it would attempt to locate Dr. Paule. (Ibid.). D'Amato & Lynch has used ITS for numerous such searches, almost always with success. (Id. ¶ 4).

In a letter dated July 20, 1989 ITS stated that it had been unable to find Dr. Paule, but it had leads and believed that it would soon locate him. (Id. ¶ 5). Ms. Webster subsequently spoke to an employee of ITS who stated that ITS had not yet located Dr. Paule, but felt that he would be located shortly. (Ibid.).

D'Amato & Lynch prepared an application for an enlargement of time to serve Dr. Paule pursuant to Fed.R.Civ.P. 6(b)(1), which allows a party to move for such an extension before the time period expires. However, it mistakenly calculated that the 120-day period for service provided in Fed. R.Civ.P. 4(j) would expire on September 11, 1989; instead the time period expired on September 8. (Id. ¶ 6).

1. In light of National Union's unexplained failure to even attempt to obtain Dr. Paule's address by simply asking his lawyers, one may

well question whether, in the event National Union prevails in the action, it should be allowed to recover the tracing service's charges.

D'Amato and Lynch filed its purported Rule 6(b)(1) application on September 11. It waited until what it thought to be the last day because of ITS's prior representations that it would soon locate Dr. Paule. (*Ibid.*). This court granted the application, and set November 30, 1989 as the new date for service. ITS located Dr. Paule on September 20, 1989, and he was served with a summons and complaint on September 30 or October 1, 1989. (*Id.* ¶ 9).

## DISCUSSION

### I. Timely Service of Process

Rule 4(j) states in pertinent part:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Fed.R.Civ.P. 4(j).

National Union's September 11 application for an enlargement of time mistakenly represented that the 120-day period had not yet expired. Therefore, the application was made and granted under Rule 6(b)(1), which contains no standard for granting such an enlargement. Because it is now clear that National Union made its application after the 120-day period had expired, National Union must show good cause for its failure to make timely service on Dr. Paule.

■ Courts in this circuit consider two factors when determining whether the plaintiff has demonstrated good cause under Rule 4(j): (1) the plaintiff's reasonable efforts to effect service, and (2) the prejudice to the defendant from the delay. *Reed Holdings Inc. v. O.P.C. Corp.,* 122 F.R.D. 441, 444 (S.D.N.Y.1988); *Gordon v. Hunt,* 116 F.R.D. 313, 319–21 (S.D.N.Y.), *aff'd,* 835 F.2d 452 (2d Cir.1987) (per curiam), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988).

■ Here, National Union and its attorneys made reasonable efforts to effect service on Dr. Paule. D'Amato & Lynch gave the address it had for Dr. Paule to a process server immediately after it filed the complaint. After D'Amato & Lynch discovered that Dr. Paule no longer lived at that address, it retained ITS, a company it had often used before with success, to locate him. D'Amato & Lynch kept contact with ITS to see how the search was progressing, and ITS gave assurances that Dr. Paule's whereabouts would soon be discovered.

Although Dr. Paule suggests that there were several avenues of investigation available to uncover his new address, National Union's attorneys were reasonably diligent in retaining an otherwise trusted firm to locate Dr. Paule and monitoring that firm's progress. While a party is not entitled merely to rely on a process server to effect service, here D'Amato & Lynch did not simply rely on L & D or ITS. Instead, it kept in contact with them to determine the status of service and whether it would be effected in time. *See Putnam v. Morris,* 833 F.2d 903, 905 (10th Cir.1987) ("We note that it is trial counsel's responsibility to monitor the activity of the process server and to take reasonable steps to assure that a defendant is timely served."); *Braxton v. United States,* 817 F.2d 238, 242 (3d Cir. 1987) (no good cause shown where "plaintiff's counsel knew that the process server was dilatory yet took no steps to insure that defendant would be timely served.").

Moreover, plaintiff's filing of its Rule 6(b) motion for an enlargement of time weighs in favor of a showing of diligence. *See Gordon,* 116 F.R.D. at 321 (such a motion "might well reflect a plaintiff's diligence"); *Quann v. Whitegate–Edgewater,* 112 F.R.D. 649, 661 (D.Md.1986) (failure to move for an enlargement after time has expired is "at least some evidence of lack of diligence."). Although D'Amato & Lynch miscalculated the expiration of the 120-day period, its attempt to seek an enlargement demonstrates that it was aware of its obligations under Rule 4(j) and was attempting to comply with them.

■ Dr. Paule asserts that he will be prejudiced from the late service. He states that once this case is dismissed, it cannot be reinstituted in federal court because the minimum amount in controversy for diversity jurisdiction is now $50,000. However, prejudice under Rule 4(j) involves impairment of the defendant's ability to defend on the merits, rather than merely foregoing such a procedural or technical advantage. *Cf. Eng v. Scully*, No. 84 Civ. 5056 (S.D.N.Y. June 2, 1989), 1989 WL 63035 (no prejudice because defendant's "defense will not in the least be disadvantaged by his late entry into the matter.") *Merced v. Dep't of Corrections*, No. 84 Civ. 5926 (S.D.N.Y. Aug. 1, 1988) 1988 WL 83416 (defendant showed no prejudice even though statute of limitations would bar refiling of action if dismissed pursuant to Rule 4(j)); *United States v. Jack Cozza, Inc.*, 106 F.R.D. 264, 268 (S.D.N.Y.1985) (defendant showed no prejudice from "plaintiff's inability to effect personal service of the summons and complaint within 120 days."). There is no cognizable prejudice apparent from National Union's service of Dr. Paule, at the latest, twenty-three days after the 120-day period had expired.

Accordingly, National Union has demonstrated good cause for failing to serve Dr. Paule within 120 days of the filing of the complaint, and defendant's motion to dismiss based on Rule 4(j) is denied.

## II. Subject Matter Jurisdiction

■ Dr. Paule contends that National Union's claim against him for $22,319.24 plus interest and expenses fails to meet the $50,000 minimum amount in controversy prescribed by 28 U.S.C. § 1332 (1988).

In 1988, Congress amended section 1332, effective May 18, 1989, to raise the minimum amount in controversy for diversity jurisdiction from $10,000 to $50,000. Pub.L. 100–702, Title II, § 201(a), 102 Stat. 4646 (codified at 28 U.S.C. § 1332). The

amendment applies to actions "commenced" on or after May 18, 1989. *See id.* § 201(b) (amendment applies to actions commenced on or after 180th day after November 19, 1988). Therefore, when National Union filed the complaint in this action on May 11, 1989 the minimum amount in controversy was $10,000, and when it served Dr. Paule on September 30 or October 1, 1989 the minimum was $50,000.

Dr. Paule asserts that in a diversity action the state rule that an action commences upon the service of a summons, N.Y. CPLR § 304 (McKinney 1972), should apply. National Union argues that the Fed.R.Civ.P. 3, which provides for commencement of an action upon the filing of the complaint, is the applicable rule.

Federal courts sitting in diversity use the substantive law of the state in which they are located. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Supreme Court held that in a diversity action state law rather than Rule 3 determines when an action commenced for the purposes of tolling the statute of limitations.[2] 446 U.S. at 752, 100 S.Ct. at 1986. The state law requiring service before tolling is "an integral part" of the statute of limitations because it serves the policies of repose and prevention of stale claims, *id.* at 751, 100 S.Ct. at 1985, and use of Rule 3 to toll the statute of limitations would impermissibly distinguish between state and federal plaintiffs. *Id.* at 753, 100 S.Ct. at 1986.

No such considerations apply in this case. Here, the issue of when an action is commenced for the purposes of the amount in controversy requirement is purely a matter of federal law. Just as Rule 3 could not interfere with the state policies underlying a state statute of limitations, here state law does not affect the federal definition of when a plaintiff may bring a diversity action in this court.

---

**2.** *Walker* reaffirmed the holding in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949).

In short, the federal law as embodied in the Federal Rules of Civil Procedure, rather than state law, governs this federal issue. National Union has thus met the required amount in controversy.

CONCLUSION

Dr. Paule's motion to dismiss is denied.