Ronald DEL RAINE, Plaintiff,

v.

Norman J. CARLSON, Charles E. Harris, Clyde Malley, Ray Stewart, Ray Lippman, Roy D. Daniels, George W. Pickett, Charles Fenton, Earl Buzzard, Jack Culley, Phillip Jerman, R. Johnson, Mr. Pringle and Ralph Aaron, Defendants.

Civ. No. 79–2340.

United States District Court,
S.D. Illinois.

March 8, 1994.

Michael Helm, recently deceased, for plaintiff.

Gerald Burke, Asst. U.S. Atty., for defendants.

### ORDER

COHN, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to final entry of judgment by a United States Magistrate Judge. An Order of Reference was entered by Judge James L. Foreman on May 30, 1980.

Plaintiff, an inmate at the United States Penitentiary–Marion, filed a mixed habeas and *Bivens* action against correctional officials for the administrative transfer of the plaintiff on June 14, 1973. This original complaint was docketed as Civil No. 73–142. On June 27, 1974, Judge James L. Foreman entered an Order disposing of the habeas claims which was appealed to the Seventh Circuit on July 24, 1974. This matter was then remanded on February 21, 1979, with instructions to consider the damages portion of the cause of action. On remand, the cause of action was redocketed as Civil No. 79–2340.

This matter is before the Court in response to the Court's Order of February 22, 1993, which directed the parties to file memorandum addressing the issues set forth in the Seventh Circuit's Remand Order *Del Raine v. Carlson*, 826 F.2d 698 (7th Cir.1987). The Court will rule on these issues without further hearing.

Twenty-one years ago, Ronald Del Raine filed suit against a number of prison officials for events which occurred in 1972. Many judicial officers within the Seventh Circuit have dealt with this matter in one form or another. Initial errors in treatment of this case, compounded with lengthy judicial delay and insufficient service of process, have delayed a hearing on the merits of Del Raine's claim for more than two decades. This matter is now before the Court pursuant to Circuit Rule 36 and the merits and service of process issues will herein be addressed. Unfortunately, it has taken this long for a court to rule that service of process with regard to a majority of defendants was never completed, and that the doctrine of qualified immunity applies to the issue of administrative placement of the plaintiff in the federal prison at Marion. Finally, the Court notes that the lone defendant served in a timely manner was not personally involved in any of the alleged unconstitutional acts.

### I.

### Facts

For purposes of clarity, this Court reproduces the facts verbatim as stated by Judge Posner in *Del Raine v. Carlson*, 826 F.2d 698, 701–02 (7th Cir.1987).

Ronald Del Raine murdered two policemen in the course of a bank robbery and in 1968 was sentenced to 199 years in prison. In 1972, while in the federal prison in Leavenworth, Kansas, Del Raine was

placed in solitary confinement without a hearing, as a suspected ringleader of a prison strike by Mexican–American prisoners, though Del Raine is not Mexican–American. He was shortly transferred to a segregated facility in the federal prison in Springfield, Missouri, and then to the "control unit" at Marion federal prison in Illinois. Marion's control unit is the highest-security facility in the United States, and its inmates live virtually in solitary confinement.

In 1973, while at Marion, Del Raine filed the present suit, in the Southern District of Illinois, against the head of the federal prison system (Norman Carlson) and a number of other prison officials. The suit asked that he be released from segregation, that the order placing him in segregation be deleted from his prison record ("expungement"), and that damages be awarded for the period that he had already spent in segregation. The district judge ruled that service on the U.S. Attorney "shall constitute sufficient service on the respondents," and the U.S. Attorney was duly served on June 20, 1973, six days after the filing of the complaint. In 1974 Del Raine's case was tried, and the judge ruled that Del Raine was entitled to a hearing on the propriety of his confinement to segregation as a disciplinary measure. The judge did not address the issues of expungement and damages. Rather than hold the hearing the prison authorities released Del Raine from segregation.

Del Raine appealed from the district judge's failure to grant him any relief on his requests for expungement and damages. For reasons unknown the processing of the appeal was long delayed, but in 1979, in an unpublished order, we remanded the case with directions that the district court consider Del Raine's request for expungement and damages. On remand the case was assigned to a magistrate. There was additional unaccountable delay but trial was finally scheduled for October 3, 1983. With only three weeks to trial, the U.S. Attorney unexpectedly moved to withdraw from representing the defendants in their personal as distinct from official capacities, on the ground that he had never been authorized to represent them in their

personal capacities. It took 10 months for the magistrate to rule on the motion, but on July 18, 1984, he granted it. On July 31 he ordered Del Raine to [personally] serve his complaint on the defendants within 60 days.

Del Raine tried. He knew only Carlson's address, and he tried to serve Carlson by mail, but Carlson failed to acknowledge service. Del Raine then managed to have him served personally. He also served interrogatories on Carlson seeking the addresses of the other defendants. Carlson answered these interrogatories, but not until May 31, 1985. On June 19 Del Raine moved for an extension of time within which to serve the remaining defendants and for an order that the U.S. Marshals Service serve them. The magistrate granted the latter request but did not rule on the former. Del Raine delivered copies of the summons and complaint to the Marshals Service forthwith, but the Service took its time about serving them on the defendants. The first of the twelve remaining named defendants was not served until November 13, 1985, the sixth not till January 2, 1986. Four summonses were returned unexecuted and Del Raine apparently never requested service on the last two defendants.

In March 1986 the U.S. Attorney—whom the seven served defendants had by now asked to defend them in their personal as well as official capacities—filed a motion to dismiss or (alternatively) for summary judgment, which the magistrate granted, primarily on the ground that Del Raine had failed to make timely service on the defendants. Del Raine has again appealed.

## II.

### Procedural History

In 1987, the Seventh Circuit Court of Appeals reversed and remanded a magistrate judge's grant of summary judgment for the defendant prison officials on the grounds that the magistrate judge did not adequately examine whether Del Raine demonstrated "good cause" under Federal Rule of Civil Procedure 4(j) for failing to serve the defen-

dant's within 60 days of the magistrate's order. *Del Raine*, 826 F.2d at 707. Judge Posner instructed the magistrate judge to consider on remand, among other points, five issues in determining whether Del Raine established good cause, and plaintiff's failure to exercise proper diligence in serving the defendants after the magistrate judge so ordered. On remand, the magistrate judge held that since Del Raine failed to effect service within the critical 60 day period, he did not meet his burden of good cause. The magistrate judge then dismissed the case. The United States Court of Appeals for the Seventh Circuit once again reversed and remanded the magistrate judge's order on the grounds that the five issues were not considered in making the good cause determination. *Del Raine v. Carlson*, 904 F.2d 38 (7th Cir.1990). On remand, this Court will address these issues, among others, as bearing on whether Del Raine has established good cause under Federal Rule of Civil Procedure 4(j) for not adhering to the magistrate judge's order, and not promptly serving the defendant's in their personal capacities after suit was filed nearly 22 years ago. This Court will also address the qualified immunity and personal involvement issues.

### III.

### Good Cause

**Federal Rule of Civil Procedure 4(j)** provides:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.[1]

Rule 4(j) is intended "to force parties and their attorneys to be diligent in prosecuting their causes of action." *Geiger v. Allen*, 850 F.2d 330, 331 (7th Cir.1988) (quoting *Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.1985)). *See also* 128 Cong.Rec. H 9849, 9851 (daily

ed. Dec. 15, 1982). If a party fails to serve the summons and complaint within the prescribed period, the Rule mandates dismissal of the action. *Floyd v. United States*, 900 F.2d 1045, 1046 (7th Cir.1990). The Rule, however, permits the plaintiff to avoid this harsh result. The suit will not be dismissed if the plaintiff can show good cause why service was not effected in a timely manner. *Bachenski v. Malnati*, 11 F.3d 1371, 1376 (7th Cir.1993). The legislative history of Rule 4(j) reveals only one example of good cause—the defendant's evasion of service. 128 Cong.Rec. H 9849, 9852 n. 25 (daily ed. Dec. 15, 1982). A district court's conclusion regarding good cause determinations are discretionary, and will not normally be disturbed absent an abuse of discretion. *Floyd*, 900 F.2d at 1046. In this case, however, the Seventh Circuit twice held that the magistrate judge's good cause determinations were unsatisfactory, and instructed this Court to determine whether Del Raine met his burden.

The Seventh Circuit listed five non-exclusive factors bearing on the good cause determination in the immediate case:

(1) Judge Foreman's erroneous ruling in 1973 that service on the U.S. Attorney would constitute service on the defendants;

(2) The defendants' failure to complain about late service;

(3) The timely service of the defendants' lawyer of choice in 1973 before the lawyer withdrew and was later reinstated;

(4) The lack of hardship on the defendants because of the delay; and

(5) The absence of a correlation between delayed service and painstakingly slow judicial proceedings.

*Del Raine v. Carlson*, 904 F.2d 38 (7th Cir. 1990). In addressing these issues, among others, this Court concludes that Del Raine failed to meet his burden of proving good cause and, after 21 years of laborious legal proceedings, dismisses this cause of action

---

1. Effective December 1, 1993, Federal Rule of Civil Procedure 4 was amended. References to the Rule in this opinion are to former Rule 4, the version in effect at the time of the magistrate's Order in 1984.

due to the plaintiff's failure to obtain personal service on thirteen defendants in accordance with Federal Rule of Civil Procedure 4(j).

### a. Erroneous Legal Ruling

■ As previously discussed, Del Raine's complaint set forth three claims. First, plaintiff asked for release from segregation. Second, plaintiff requested that the order placing him in segregation be expunged from his prison record. Third, that damages be awarded for the twenty-eight months he was confined to segregation. After filing the complaint, Del Raine promptly effected service of process on the U.S. Attorney as directed by the district court. District Judge James L. Foreman, construing the Complaint as a Petition for Writ of Habeas Corpus, ruled that service on the U.S. Attorney constituted service. The Seventh Circuit deemed this ruling incorrect, finding that the damages portion of the suit required personal service, and service on the U.S. Attorney was insufficient. A suit seeking monetary relief for constitutional violations from the defendant prison officials is known as a *"Bivens"* suit. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Lewellen v. Morley*, 909 F.2d 1073, 1077 n. 9 (7th Cir.1990). Since a *Bivens* suit is against a defendant in his individual capacity, personal service of process is required under Federal Rule of Civil Procedure 4(d)(1). *Robinson v. Turner*, 15 F.3d 82, 84 (7th Cir.1994); *Sellers v. United States*, 902 F.2d 598, 603 (7th Cir.1990). Del Raine relied on Judge Foreman's erroneous ruling, and made no attempt to correct the deficient service until eleven to thirteen years after initiating the suit.

The issue of whether reliance on an erroneous court ruling which delayed service of process is good cause for not effecting service of process within 120 days, appears to be a question of first impression in the Seventh Circuit. In *Robbins v. Brady*, 149 F.R.D. 154, 157 (C.D.Ill.1993), Judge Mills held that a paralegal's reliance on the incorrect advice of a Treasury Department lawyer regarding proper methods of service did not support a finding of good cause for failing to properly effect service of process. The court declared that the paralegal's reliance on incorrect ad-

vice did not exonerate the duty of plaintiff's counsel to ensure that filing was proper. *Id.* (Citing *Birdsong v. United States*, No. 91 C 7966, 1992 WL 245630 at *1 (N.D.Ill. Sept. 24, 1992) and *Dowdy v. Sullivan*, 138 F.R.D. 99, 101 (W.D.Tenn.1991)).

This case is distinguishable from *Robbins*. In *Robbins*, the paralegal relied on the erroneous advise concerning service of process given by a government attorney. In the instant case, all parties relied not on the recommendation of one of a myriad of government attorneys, but rather on the ruling of a judge. Judges are not only authorized to give advise, but to govern and rule over various questions of law. Certainly, counsel and clients are generally entitled to rely on a court's judgments. While the court's initial ruling was erroneous, had plaintiff's counsel fully researched the case after his appointment early in the case, he would have known that a damages suit required personal service on the parties. Therefore, *Robbins* is factually distinguishable and inapplicable to the immediate case.

Many district courts have held that reliance on erroneous advise from court clerk's, or errors by the same, is sufficient good cause for not effecting service of process within 120 days. In *Patterson v. Brady*, 131 F.R.D. 679, 684–85 (D.Ind.1990), the Clerk's office did not advise the *pro se* plaintiff of Rule 4(j), and failed to promptly adhere to a court order requiring the appointment of counsel. The court reasoned that since the Clerk's office was wholly responsible for the untimely service of process, the plaintiff established her burden of showing good cause. Similarly, in *Block v. Boeing Military Airplane Co.*, 671 F.Supp. 19, 22 (D.Kan.1987), plaintiff established good cause by relying to his detriment on the clerk of the court, which resulted in delayed service. *See also Puett v. Blanford*, 912 F.2d 270, 275 (9th Cir.1990) (action should not be dismissed under Fed. R.Civ.P. 4(j) where court clerk or U.S. Marshal was negligent in service of process); *Abdel–Latif v. Wells–Fargo Guard Services Inc.*, 122 F.R.D. 169, 174 (D.N.J.1988) (good cause may be found when a delay in issuance or service of a summons is due to a clerk's negligence or something else beyond plain-

tiff's control); *Moorehead v. Miller*, 102 F.R.D. 834, 836 (D.V.I.1984) (good cause shown by erroneous statement by the clerk's office); 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1086 at p. 27 (1987) (delays in service caused by clerk's negligence would probably be enough for good cause under Rule 4(j)).

■ Del Raine's reliance on the erroneous court ruling is indicative of good cause to some degree. At the time the plaintiff filed suit, he was proceeding *pro se* and seeking *in forma pauperis* status. However, shortly after the court granted his petition to proceed *in forma pauperis*, Roy Eugene Clark was appointed to represent him in the original cause of action. After being appointed, Del Raine's attorney should have realized after reading the complaint that Federal Rule of Civil Procedure 4(d)(1) required personal service be effected with regard to the *Bivens* claim against the defendants. Likewise, counsel should have spotted the judge's error directing the defective service. Nonetheless, many circuit and district courts are in agreement that reliance on erroneous advise by a court clerk, or errors made by such an office, suffice to establish good cause. If reliance on a court clerk's office error satisfies good cause under Rule 4(j), then certainly reliance on a court's mistaken ruling may be evidence of good cause. The initial ruling of the district court, although clearly demonstrating some good cause for not adhering to the 120–day requirement of Rule 4(j), is not the only excuse for Del Raine's eleven to thirteen year delay in serving the defendants. Many other factors mitigate against a finding of good cause, as discussed *infra*.

### b. Failure to Complain

■ Because this matter proceeded as a habeas corpus action, none of the defendants complained about the delay in personal service prior to 1983, when the U.S. Attorney moved to withdraw as counsel for the defendants in their personal capacities. When the magistrate judge granted the motion on July 31, 1984, he ordered Del Raine serve his complaint on the defendants personally with-

in 60 days.[2] Rule 4(j) states that a plaintiff has 120 days within which to serve the summons and complaint on the defendant. Rather than granting Del Raine 60 days to effect service, Rule 4(j) entitled the plaintiff to 120 days and this Court believes that plaintiff should have been given that amount of time to complete service.

■ In light of this development, plaintiff performed personal service on Norman Carlson on October 17, 1984, within the critical 120–day period. The remaining defendants had not yet been served. The defendants' failure to complain about late service cannot form a basis for good cause. These unserved defendants cannot be expected to know they were being sued for an event which occurred twelve years prior to the magistrate judge's Order directing service. The plaintiff cannot rely on this fact in asserting that he established good cause for not promptly serving the defendants. Furthermore, failure by the defendants to complain does not go toward an explanation by the plaintiff for failing to effect proper service as directed. *Cf. Tso v. Delaney*, 969 F.2d 373, 377 (7th Cir.1992).

■ Likewise, when the magistrate judge permitted the defendant to file an Amended Complaint on March 22, 1985, the mere absence of any objection from any of the unserved defendants is insufficient for establishing good cause. The filing of an amended complaint does not toll the service period and provide an additional 120 days for service. *Sato v. Kwansky*, No. 93 C 0037, 1993 WL 413953 at *4 (N.D.Ill. Oct. 15, 1993); *Crowder v. True*, No. 91 C 7427, 1993 WL 226296 at *3 n. 1 (N.D.Ill. June 24, 1993). However, addition of a new party through an amended complaint would initiate a new 120 day time-table as to the added defendant. *Excalibur Oil, Inc. v. Gable*, 105 F.R.D. 543, 545 n. 3 (N.D.Ill.1985). The purpose of an amended complaint is not to gain an extension of time for effecting service on the defendants, but rather it is to conform the pleadings to the proof. *Crowder*, 1993 WL 226296 at *2. Plaintiffs must first per-

---

**2.** In a per curiam order, *Del Raine v. Carlson*, 904 F.2d 38 (1990), the Seventh Circuit ordered this court to consider the basis of the magistrate judge's decision to give Del Raine 60 days, rather than 120 days, in which to serve the defendants. The Court intimated that Rule 4(j) allows 120 days for such service to be effected.

fect service under the original complaint and later amend. Even after Del Raine filed the amended complaint, the remaining unserved defendants were not served until nearly six to eight months later. Plaintiff cannot successfully assert that failure to complain about late service from the defendants during this period constituted good cause; these defendants were wholly unaware that they ever had been sued. Proper personal service is a prerequisite to this Court's exercise of personal jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987); *Audio Enterprises, Inc. v. B & W Loudspeakers of America*, 957 F.2d 406, 409 (7th Cir.1992). To find good cause under Rule 4(j) in this instance would put the cart before the horse.

### c. Service on the Defendant's Lawyer in 1973

█ The third issue bearing on the good cause determination is the timely service on the U.S. Attorney at the commencement of the suit in 1973. Del Raine served the U.S. Attorney shortly after he was granted *in forma pauperis* status and in response to Judge Foreman's order. None of the fourteen defendant's were served personally with regards to the *Bivens* claim and the case proceeded on the habeas corpus claims. In September, 1983, the U.S. Attorney withdrew from representing the defendants in their personal as distinct from official capacities on the ground that he had never been authorized to represent them in their personal capacities. The U.S. Attorney was later reinstated as counsel for the defendants who had been served. Merely because Del Raine served defendants' attorney in 1973 in their official capacities does not establish his burden of showing good cause for not serving defendants in their individual or personal capacities.

The correct method of service under Federal Rule of Civil Procedure 4(d) depends on the plaintiff's theory behind his or her claim. *Micklus v. Carlson*, 632 F.2d 227, 240 (3d Cir.1980). Del Raine's complaint contained three claims; 1) that he be released from segregation; 2) that the order placing him in segregation be expunged from his prison record; and 3) that damages be awarded for the period that he had already spent in segrega-

tion. The first claim requesting he be placed back into the general prison population was a habeas corpus claim. *McCollum v. Miller*, 695 F.2d 1044, 1046 (7th Cir.1982). The expungement claim also fell under the habeas corpus statute. *Larsen v. Sielaff*, 702 F.2d 116, 118 (7th Cir.1983). Since habeas corpus claims are suits against federal officers in their official capacity, the plaintiff must serve the U.S. Attorney or Attorney General of the United States. Fed.R.Civ.P. 4(d)(4), (5); *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). Del Raine effected such service on the U.S. Attorney with regards to his two habeas claims. The defendants, through their attorney, may have been aware of the two habeas claims. But this point is moot since prison officials released Del Raine from segregation, and Judge Posner ordered prison authorities expunge his record. *Del Raine*, 826 F.2d at 701, 707. Del Raine's third claim was a *Bivens* claim. A suit against a federal employee in his or her individual, as opposed to official, capacity is a *Bivens* claim. *Robinson v. Turner*, 15 F.3d 82 (7th Cir.1994); *Lewellen*, 909 F.2d at 1077 n. 9. The Seventh Circuit has held that in *Bivens* actions, the plaintiff must perform personal service of process. *Sellers*, 902 F.2d at 603. *See also* 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1107 at 163 (1987); James W. Moore et al., *Moore's Federal Practice* § 4.29 at 4–240–41 (2d ed. 1993). Del Raine failed to effect such service on any of the defendants in the 1970's. Service on the defendants in their official capacities does not amount to service in their individual capacity. *Robinson*, 15 F.3d at 84–85; *Lewellen*, 909 F.2d at 1077 n. 9. Therefore, the fact that the U.S. Attorney, defendants' current counsel, was properly served in 1973 regarding the two habeas corpus claims does not indicate that any of the defendants were properly served with regards to the *Bivens* claim. In fact, to this day, plaintiff has failed to effect personal service on many of the defendants. These defendants may have no idea Del Raine has filed a *Bivens* suit against them. Because of the lengthy delay, plaintiff cannot demonstrate good cause for failing to effect proper service on a party to a lawsuit.

### d. Prejudice on the Defendants Due to Delay

■ Another factor bearing on whether Del Raine established good cause for not promptly effecting service of process is whether the defendants have been prejudiced in defending the suit due to the inordinate delay in service of process. Standing alone, a lack of prejudice to the defendants cannot serve as an adequate foundation for a good cause determination. *Tso,* 969 F.2d at 377; *Floyd,* 900 F.2d at 1048; *Poulakis v. Amtrak,* 139 F.R.D. 107, 109 (N.D.Ill.1991); *United States v. Fields,* 703 F.Supp. 749, 750 (N.D.Ill.1989). "These considerations have to do with the gravity and equity of a dismissal for improper service, but they do not go toward an explanation for the failure— within the 120–day period—to achieve proper service. At the very least they would have to be accompanied by some showing of reasonable diligence in attempting to comply with the rules." *Tso,* 969 F.2d at 377. If a plaintiff can proffer an explanation for failing to conform with Rule 4(j) which could sustain a finding of good cause, an absence of prejudice to the defendant is a relevant consideration in determining whether the explanation justifies relief. *Floyd,* 900 F.2d at 1049.

■ Del Raine, as discussed, has not offered a legitimate explanation for noncompliance with Rule 4(j). In fact, once given a second bite at the apple to personally serve the defendants in 1984, the plaintiff only managed to serve one defendant (Norman Carlson) in time, and some of the remaining thirteen were not served until many months after the critical 120 day period expired. Del Raine cannot successfully argue that his failure to comport with the dictates of Rule 4(j) have not prejudiced the defendants. The events surrounding this lawsuit occurred nearly 22 years ago. The defendants' memory regarding the placement of Del Raine in solitary confinement in 1972, is surely more clouded today then it would have been if service was effectuated in 1973. Presumably, defendants' ability to produce documents, let alone remember the incidents surrounding their creation, are prejudiced by the unusually lengthy delay occasioned by the Court's and Del Raine's errors. Even assuming that the delay caused the defendants no prejudice, the plaintiff has failed to produce an adequate explanation of why he did not effect timely service of process. Therefore, this Court finds that any alleged lack of prejudice to the defendants, standing alone, does not support a finding of good cause.

### e. No Correlation Between Delayed Service and Slow Court Proceedings

■ This lawsuit has lingered in the federal courts for 21 years. After trial of the matter in 1974, Del Raine appealed the district judge's failure to grant his request for expungement of his prison record and damages. Nearly five years of unexplained judicial delay passed, and the Seventh Circuit remanded the case to a magistrate judge to address these two issues. After four more years of inexplicable court holdup, trial was finally scheduled. The U.S. Attorney then moved to withdraw as counsel for the defendants in their personal capacities in 1983, on the eve of trial. Ten months later, on July 31, 1984, the magistrate judge granted the motion. The parties have spent the last nine years litigating service of process issues.

The judicial delay and delay in serving the defendants are mutually exclusive; one did not cause the other. The delay caused by the judicial system shelved resolution of the underlying lawsuit. Del Raine's failure to properly serve the defendants in the first instance was not a product of court detainment, but rather was an error committed by him and his attorney. The plaintiff's further delay in serving the defendants after the magistrate judge granted the extension of time likewise was not generated by the court's extended proceedings, but rather by the errors of Del Raine's attorney. If delay in effecting service of process were attributable solely to the court, good cause may be found. However, this is not the case today. The two "sets" of delays were not causally related; but rather were both independent of one another. Therefore, because no correlation exists between the two delays, Del Raine has not shown good cause for failing to properly serve the defendants.

### f. Other Factors Bearing on the Good Cause Determination

 The Seventh Circuit did not confine this Court's analysis of the good cause determination to the five issues addressed above. Of particular relevance are the events surrounding Del Raine's failure to serve nearly all of the defendants after the magistrate judge's ruling on July 31, 1984, granting an extension of time to effect service. The magistrate ordered the plaintiff to effect personal service on the defendants within 60 days. As previously discussed, Del Raine was entitled to 120 days. Rather than abide by the magistrate judge's mandate and personally serve the defendants, Del Raine attempted service by mail on Carlson. Carlson refused to acknowledge such service. Service by mail is not complete until an acknowledgement form is filed with the court. *Audio Enterprises,* 957 F.2d at 409 (citing *Geiger,* 850 F.2d at 332 n. 3). Nonetheless, the magistrate required personal service be performed because *Bivens* suits so require. Del Raine finally effected personal service on Carlson on October 17, 1984; within the critical 120 day period. The plaintiff met the requirements of Rule 4(j) as to this defendant, and this court can properly exercise personal jurisdiction over the merits of Del Raine's claim with regards to Carlson. *Audio Enterprises,* 957 F.2d at 409. As to the other defendants, this Court lacks such jurisdiction.

 Del Raine's actions with regards to attempting service on the remaining defendants directly bears on the good cause determination. Rule 4(j) required Del Raine perform personal service within 120 days after July 31, 1984. The plaintiff only served one defendant within that period. In fact, Del Raine failed to even attempt service on any of the remaining defendants within that time. If the plaintiff had made such efforts, yet all failed, good cause might exist for not dismissing his claims. But no such good faith efforts were even tried. Other fruitless efforts were attempted, and they bear on the determination of good cause. First, the plaintiff simultaneously served interrogatories on Carlson when effecting personal service. The interrogatories requested that Carlson divulge the addresses of the remaining defendants. Unfortunately, Carlson did not answer these interrogatories until May 31, 1985; nearly seven months later. Employing such alternative methods of locating defendants is indicative of good cause. Del Raine, though, cannot rely on the fact that Carlson was dilatory in supplying the defendants' addresses. *Geiger,* 850 F.2d at 333; *Fowler v. Heaton,* No. 88 C 4778, 1989 WL 112770 (N.D.Ill. Sept. 21, 1989); *Martin v. City of New York,* 627 F.Supp. 892, 900 (E.D.N.Y.1985). Del Raine was required to pursue other alternative methods of locating and serving the defendants, such as inquiring at the post office, hiring a private process server, inquiring at the defendants' place of business, or at least moving for an extension of time prior to the expiration of time under Federal Rule of Civil Procedure 6(b). *Geiger,* 850 F.2d at 333 n. 5. Therefore, because Del Raine failed to pursue such alternatives when Carlson failed to timely answer the interrogatories, he did not establish good cause.

 Second, Del Raine's motion for an extension of time pursuant to Rule 6(b), which was filed on June 19, 1985, does not exhibit good cause. If a plaintiff is unable to ensure timely service of process, he or she should move for an enlargement of time under Rule 6(b). *Fields,* 703 F.Supp. at 752 (citing *Lovelace v. ACME Markets,* 820 F.2d 81, 84 (3d Cir.1987)); *Coleman v. Greyhound Lines, Inc.,* 100 F.R.D. 476, 478 (N.D.Ill. 1984). Filing a Rule 6(b) motion weighs in favor of a showing of good cause. *Coleman,* 100 F.R.D. at 478, *National Union Fire Ins. v. Barney Assoc.,* 130 F.R.D. 291, 293 (S.D.N.Y.1990), *Quann v. Whitegate–Edgewater,* 112 F.R.D. 649, 661 (D.Md.1986). In order for the motion to contribute to a showing of good cause, it should be filed prior to the end of the critical period. *National Union,* 130 F.R.D. at 292–93; David D. Siegel, Practice Commentary C4–38, Federal Civil Rule 4(j), 28 U.S.C. (1992). On June 19, 1985, nearly six months after the critical 120 day period expired, Del Raine moved for an extension of time within which to serve the remaining defendants pursuant to Rule 6(b). In the same motion, the plaintiff also requested that the Court order the U.S. Marshals Service to serve the remaining defendants. While the magistrate judge did rule on the portion of the motion requiring the U.

Marshals Service to serve the remaining defendants, he did not address the request for the extension of time which was untimely. Accordingly, plaintiff did not request an extension of time in sufficient time to establish good cause.

 Third, the plaintiff's reliance on the U.S. Marshals Service to perform service as directed by the court also does not establish good cause. When a plaintiff provides information to the Marshals Service necessary to identify and serve a defendant, the Marshal's failure to accomplish the task is automatically good cause under Rule 4(j). *Sellers*, 902 F.2d at 602; *Crowder*, 1993 WL 226296 at *3. In both *Sellers* and *Crowder*, the plaintiff moved that the Marshals Service perform service of process prior to the expiration of the 120 day period, which the respective courts granted. This was not the case with Del Raine. As previously stated, on June 19, 1985, Del Raine moved for an order that the U.S. Marshals Service serve the remaining defendants, which the magistrate judge granted. The Marshals Service was dilatory and took from five to seven months to complete service. Rule 4(j) required Del Raine serve his complaint and summons on the defendants no later than 120 days after July 31, 1984. The motion to serve the defendants was filed and granted nearly six months after the 120 day watershed and was therefore untimely. In this instance, the failure of the Marshals Service to serve the defendants cannot form the foundation for finding good cause.

### f. Conclusion Regarding Good Cause Determination

This Court holds that Del Raine has not established his burden of showing good cause for failing to serve the defendants in a timely manner pursuant to Rule 4(j). The Rule mandates dismissal without prejudice absent such a showing. *Geiger*, 850 F.2d at 331–32. Therefore, the claims against all defendants except for Carlson are hereby dismissed.

### IV.

### PERSONAL INVOLVEMENT

 In *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), the Court stressed that § 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *McBride v. Soos*, 679 F.2d 1223 (7th Cir.1982); *Adams v. Pate*, 445 F.2d 105 (7th Cir.1971). Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal or an affirmative link between the misconduct complained of in the official suit is necessary. *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). In short, individual liability is predicated upon personal responsibility. *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir.1984). To establish personal involvement, the plaintiff must establish (1) that the defendant acted or failed to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or (2) the conduct which caused the constitutional deprivation occurred either at the defendant's direction or with his knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982); *Wellman v. Faulkner*, 715 F.2d 269, 275 (7th Cir.1983); *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1983). Finally, to establish a claim against a supervisory official, there must be a showing that the official knowingly, willingly or at least recklessly cause the alleged deprivation by his action or failure to act. *Smith v. Rose*, 761 F.2d 360 (7th Cir.1985); *Rascon v. Hardiman*, 803 F.2d 269 (7th Cir.1986).

 It is clear that a federal official's exposure to civil liability under *Bivens* is the same as a state official's under § 1983. *See Butz v. Economou*, 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978). As set forth above, the doctrine of *respondeat superior* is not applicable in civil rights actions. In the instant case, defendant Norman Carlson, former Director of the Bureau of Prisons, is the only named defendant upon whom service was completed in a timely fashion. However, a careful reading of plaintiff's Complaint clearly establishes that defendant Carlson's only relationship to the alleged cause of action is due to his supervisory position within the Bureau of Prisons. This is not sufficient to establish liability and this cause of action must be dismissed against Norman Carlson.

## V.

### QUALIFIED IMMUNITY

█ Alternatively, this Court finds that the defendants are entitled to qualified immunity in this cause of action. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions. *Cleveland–Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir.1989), *cert. denied*, 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 331 (1990); *see also, Malley v. Briggs*, 475 U.S. 335, 339, 106 S.Ct. 1092, 1095, 89 L.Ed.2d 271 (1985). Though qualified immunity is categorized as a defense, it functions as "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

In order to hold the defendants liable in this case, the Court must determine that the contours of the constitutional right alleged to have been violated must have been sufficiently clear, so that a reasonable official would have understood that his actions were violating the law. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In *Wade v. Hegner*, 804 F.2d 67 (7th Cir.1986), the Seventh Circuit set forth a two-step approach to determine whether a defendant was entitled to qualified immunity for his acts. Under this approach, the court must ask, "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Id.* at 70.

█ Ronald Del Raine initially brought this cause in 1973, after he had been removed from the federal penitentiary at Leavenworth and placed in administrative segregation at the United States Penitentiary–Marion, Illinois in 1972. This placement appears to have been brought about due to Del Raine's alleged involvement in a work stoppage. Review of the Code of Federal Regulations in effect in 1972, fails to indicate any regulations which prohibited correctional officials from transferring plaintiff within the prison system. The only prohibition against transfer appears to be *Adams v. Carlson*, 375 F.Supp. 1228 (E.D.Ill.1974), which held that prison officials must provide an inmate with due process guarantees prior to his placement in punitive segregation. However, despite this opinion, the Court notes that issues concerning placement of inmates within the prison system continued to be litigated long after this case began. In *Meachum v. Fano*, 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, *reh'g denied*, 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976), it was established that inmates have no liberty interest in remaining in a prison's general population. Finally, approximately ten years after this case began, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), found that segregation is the sort of confinement that inmates should anticipate receiving at some point in their incarceration and does not involve an interest independently protected by the due process clause. Because the issue of segregation was not resolved until 1983, long after this case began, this Court finds that the defendants are entitled to qualified immunity in this cause of action.

Accordingly, for the above-stated reasons, IT IS THE ORDER of this COURT that this cause of action be DISMISSED.