**Ronald RIDINGS and Darvin D. Salyers, Plaintiffs–Appellants,**

v.

**LANE COUNTY, OREGON, Defendant–Appellee.**

**No. 87–4103.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1988.

Decided Dec. 1, 1988.

David C. Force, Eugene, Or., for plaintiffs-appellants.

John Hoag and David B. Williams, Eugene, Or., for defendant-appellee.

Before SCHROEDER, PREGERSON and LEAVY, Circuit Judges.

SCHROEDER, Circuit Judge:

The plaintiffs were employed as civil investigators in the office of the Lane County District Attorney prior to February 22, 1985. Their employment was terminated on that date. In this lawsuit against the County, they claim that they are entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 207 (1982) ("FLSA"), for overtime hours allegedly worked between January of 1983 and the time that they were terminated. They also claim that their terminations constituted unlawful retaliation for their assertion of their overtime claims, and that they were thus entitled to damages pursuant to 29 U.S.C. § 215(a)(3). A magistrate heard the case by consent of the parties and granted summary judgment for the defendants.

Plaintiffs appeal to this court, claiming that the magistrate erred as a matter of law in holding that the functions they performed as investigators were "traditional government functions," and that they were therefore not covered under the FLSA as it was interpreted during their employment. See National League of Cities v. Usery, 426 U.S. 833 (1976). They also contend that the magistrate erred in granting summary judgment on their retaliation claim because the magistrate overlooked a material issue of fact. We affirm.

First, however, we examine a threshold jurisdictional issue. At the time that the parties consented to have a magistrate try the case, the parties also consented to have any appeal heard by the district court. Counsel for both parties executed the consents simultaneously for both trial to the magistrate and appeal to the district court on forms provided by the Clerk of the United States District Court in Eugene, Oregon. There was at that time no resident district judge in Eugene.

Pursuant to 28 U.S.C. § 636(c)(4), consent to appeal to the district court may be given at the same time consent to trial by the magistrate is given. That section provides that:

... [A]t the time of reference to a magistrate, the parties may further consent to appeal on the record to a judge of the district court in the same manner as on an appeal from a judgment of the district court to a court of appeals.

After judgment, however, the plaintiffs appealed to this court, rather than to the

district court. The appeal was briefed and calendared for argument without objection. Because it is the duty of any court to ensure itself of its own subject matter jurisdiction, *Fiester v. Turner*, 783 F.2d 1474, 1475 (9th Cir.1986) we, *sua sponte*, inquired as to the effect upon our jurisdiction of the consent to a district court appeal. Upon our inquiry it became apparent to us that the parties were no longer aware of the existence of the consent when the time for appeal arrived.

■ The question we must decide is whether, even though the appeal has proceeded through to argument stage without objection from either party to our exercise of jurisdiction, we must nevertheless transfer the appeal to the district court.[1] We perceive no purpose that would be served by such a ruling. The statute, 28 U.S.C. § 636, is clearly directed toward creating alternative forums for appeals from magistrates' judgments. It leaves the choice of forum to the parties. Neither party has been prejudiced by the appeal to this court. The appellants chose this route and appellees effectively acquiesced.

We therefore hold that the parties' consent to a district court appeal does not create a permanent and nonwaivable jurisdictional bar to appeal to this court. If the non-appealing party wishes to require compliance with a stipulation of appeal to the district court, the non-appealing party should raise a timely objection to the exercise of jurisdiction by this court. None was made here.

Our decision is not in conflict with the only other circuit decision we have found in which a remotely similar situation was presented. In *Wharton–Thomas v. United States*, 721 F.2d 922, 924 (3d Cir.1983), decided soon after section 636(c)(4) was added to the Federal Magistrates Act, the court took a lenient attitude in light of the circumstances in that case and exercised its jurisdiction. We reach the same result.

■ We therefore proceed to the merits of the appeal. The principal issue is whether the employees were performing "non-traditional government functions" and hence were entitled to overtime pay between January 1983 and February 1985.

Following the decision of the United States Supreme Court in *National League of Cities* and prior to the decision of the Supreme Court in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985), state and local government employees were covered by the FLSA and hence entitled to overtime compensation only if their work involved non-traditional government functions. *Cf. National League of Cities*, 426 U.S. at 852. In describing those functions, the Court in *National League of Cities* stated that traditional governmental functions include:

> such areas as fire prevention, police protection, sanitation, public health, and parks and recreation. These activities are typical of those performed by state and local governments in discharging their dual functions of administering the public law and furnishing public services.... These examples are obviously not an exhaustive catalogue of the numerous line and support activities which are well within the area of traditional operations of state and local governments.

*Id.* at 851 & n. 16.

*National League of Cities* held that the commerce clause did not empower Congress to enforce the FLSA's minimum wage and overtime provisions against the states in areas of traditional governmental functions. To effectuate *National League of Cities*, the Department of Labor in 1979 enacted a regulation explaining that the Department would not enforce the FLSA where state and local employees were performing traditional governmental functions. 29 C.F.R. §§ 775.2–775.4. The regulation also attempted to give some guidance as to what those functions were. The regulation adopted the activities listed in

---

1. 28 U.S.C. § 1631 provides that where an action or appeal is filed in a court lacking jurisdiction, that court may transfer the action to the proper forum where transfer is in the interest of justice.

*National League of Cities* as examples of traditional functions, and expressly added the operation of libraries and museums to the list.[2]

In *Garcia* the Supreme Court overruled *National League of Cities* and held that the FLSA could be applied to all state and local employees, including those performing work within traditional government functions. In response to *Garcia*, Congress enacted the Fair Labor Standards Amendments of 1985, which prevented financial hardship to the states by making *Garcia* nonretroactive. Section 2(c)(1) of the 1985 amendments provides that workers in areas of traditional governmental functions can sue only for minimum wage and overtime violations occurring after April 15, 1986. Fair Labor Standards Amendments, Pub.L. No. 99–150, § 2(c)(1), 99 Stat. 788–89 (reprinted as a note at 29 U.S.C. § 216 (Supp. IV 1986)). Workers in areas of non-traditional functions were never barred from suit under *National League of Cities*, and thus can sue for any violations whenever they occurred.

Section 2(c)(1) of the 1985 amendments expressly adopted the definition of traditional governmental functions provided in 29 C.F.R. §§ 775.2 and 775.4.[3] Thus, these regulations, though originally drafted only as guidelines for the Department of Labor

enforcement policy, were given the force and effect of law by the 1985 amendments.

■ In this case all of the work for which overtime is claimed was performed prior to *Garcia* and the 1985 amendments. Thus the *National League of Cities* test applies, and appellants cannot recover unless they were working in a "nontraditional" government function. They appropriately ask us to look to the language in 29 C.F.R. §§ 775.2, 775.4. ·That regulation includes "police protection" as a traditional function. The appellants' contention is that the listing in the regulation is exclusive, and that because it refers to "police protection" as a traditional government function, but does not refer to "investigators" or "prosecutors," appellants were employed in a non-traditional government function, and are entitled to overtime. Their position thus turns upon whether the regulation is intended to be an exclusive delineation of traditional government functions.

We hold that the regulation's list of traditional government functions is not exclusive. This is because the regulation is drawn from the law as announced in *National League of Cities*. There the Supreme Court expressly stated that, although it was providing examples of tradi-

---

**2.** The regulation stated:

    (b) In view of the *National League* decision, the Secretary will not file suit to enforce the minimum wage and overtime compensation provisions of the FLSA against a State or its political subdivisions unless at least 30 days notice has first been given that, in the opinion of the Administrator, the activities in question are not integral operations in areas of traditional governmental functions. Such notice will be provided either by specific notification of the employing body in question or by general notification by publication in the Federal Register in the form of amendments to § 775.3.

    \*   \*   \*   \*   \*   \*

    (a) In the *National League* decision, it was made clear that schools and hospitals, fire prevention, police protection, sanitation, public health, and parks and recreation are traditional functions or activities of States and their political subdivisions.

    (b) In addition, the Administrator has determined that the following functions of a State

or its political subdivisions are traditional (From time to time, this section will be amended to list other such functions determined to be traditional.)

    (1) Libraries.
    (2) Museums.

  29 C.F.R. §§ 775.2, 775.4 (1987).

**3.** Section 2(c) provides that:

    No State, political subdivision of a State, or interstate governmental agency shall be liable under section 16 of the Fair Labor Standards Act ... for a violation of section 6 ..., 7, or 11(c) ... of such Act occurring before April 15, 1986, with respect to any employee of the State, political subdivision, or agency who would not have been covered by such Act under the Secretary of Labor's special enforcement policy on January 1, 1985, and published in Sections 775.2 and 775.4 of title 29 of the Code of Federal Regulations.

  Pub.L. No. 99–150, § 2(c)(1), 99 Stat. 788–89 (1985).

tional governmental functions, those examples were not exhaustive. *National League of Cities*, 426 U.S. at 851 n. 16. In addition, the regulation itself states that it defines the listed categories, *"among others,"* as traditional government functions.[4]

The prosecution of crimes is no less a traditional governmental function than is the operation of a police force. Law enforcement includes both the investigation of crimes and the prosecution of criminal proceedings. Therefore these appellants, though employed as investigators by the county prosecutor rather than by the county police force, were nevertheless employed in traditional government functions. Appellants were not covered by the FLSA under the *National League of Cities* test. The district court correctly ruled that plaintiffs are not entitled to overtime pay.

■ We turn now to the appellants' contention that we should remand their retaliation claim to the district court for trial. Appellants claim that their termination in February of 1985 was in retaliation for their assertion of overtime claims under the FLSA. Appellants contend that if they were not covered by the FLSA prior to the Supreme Court's decision in *Garcia*, as we have held they were not, they were nevertheless protected from any discharge in retaliation for their claims. Their retaliation claim is based upon section 8 of the 1985 Fair Labor Standards Amendments, Pub.L. No. 99–150, 99 Stat. 787, 791 (1985) (reprinted as a note at 29 U.S.C. § 215 (Supp. IV 1986)). Section 8 extended the Fair Labor Standards Act protections against unlawful discharge to state employees who asserted coverage under the Act on or after February 19, 1985.[5]

That section, however, provides no remedy for discharge in retaliation for assertion prior to February 19, 1985 of overtime claims by state employees who were not covered by the FLSA under *National League of Cities*. In order to prevail under this statute, the plaintiffs must therefore be able to show that they asserted their claims for overtime after February 19, 1985.

Appellants argue that there is an issue of fact concerning when they asserted their claims and that summary judgment was improper. There is some dispute in this record as to when in January of 1985 the claims were asserted. However, because there is no contention that the claims were asserted after February 19, 1985, there is no material issue of fact. Accordingly, summary judgment was properly entered on the claim for retaliatory discharge, as well as appellants' claims to overtime.

AFFIRMED.

---

4. The regulation states that:
   On June 24, 1976, the United States Supreme Court ruled in *National League of Cities, et al. v. Usery*, 426 U.S. 833, that the minimum wage and overtime compensation provisions of the Fair Labor Standards Act (FLSA) are not constitutionally applicable to the integral operations of the States and their political subdivisions in areas of traditional governmental functions. Such areas include, *among others,* schools and hospitals, fire prevention, police protection, sanitation, public health, and parks and recreation. They do not include, *among others,* the operation of a railroad by a state. . . .

29 C.F.R. § 775.2(a) (emphasis added).

5. "A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 shall be held to have violated section 15(a)(3) of such Act. . . ." Pub.L. No. 99–150, § 8, 99 Stat. 791 (1985).