77 F.3d 484
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ronald DEL RAINE, Plaintiff-Appellant,
v.
Norman A. CARLSON, et al., Defendants-Appellees.
 Nos. 94-2595, 94-3101.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 28, 1995.[1]
Decided Feb. 1, 1996.
 
 Before POSNER, FAIRCHILD, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 This 22-year-old case is before us for the fourth time. We once again reverse the decision from which plaintiff appeals, and remand with directions.
 
 BACKGROUND
 
 2
 Plaintiff Ronald Del Raine, a federal prisoner, is serving a 199-year prison sentence for murdering two police officers during a bank robbery. In April 1972, he was placed in solitary confinement without a hearing in Leavenworth, allegedly because he was the suspected ringleader of a prison strike by Mexican-American inmates and, after a transfer in 1973, he was placed in the "control unit," allegedly the equivalent of segregation, at the federal prison in Marion, Illinois, where he remained until August 1974. No hearings were held in relation to these placements. (Amended Complaint, para. 4-14.) In 1973, Del Raine filed this suit.[2] Prior to trial, Judge Foreman ruled that service on the U.S. Attorney was sufficient service on defendants. (Service would not be raised again as a problem until 11 years later.) The U.S. Attorney was served on June 20, 1973. At the time he filed the complaint, Del Raine raised due process and eighth amendment claims, and sought release from segregation, expungement of the disciplinary sanction from his prison record, and damages for the time spent in segregation.
 
 Trial
 
 3
 In 1974, after a bench trial, the district court ruled in favor of Del Raine, finding that he was entitled to a due process hearing. However, the judge ignored the issues of expungement of the disciplinary record, and monetary damages. The prison authorities at Marion thereafter chose to release Del Raine from the control unit, rather than provide a hearing.
 
 The first remand
 
 4
 Del Raine appealed; he had been released from segregation, but wanted the issues of expungement and damages addressed. After an unexplained five years between trial and appellate decision, on February 21, 1979, this court agreed with Del Raine and remanded for consideration of those two issues. Del Raine v. Carlson, No. 76-1384 (7th Cir. Feb. 21, 1979) (unpublished order) ("Del Raine I ").
 
 
 5
 After another long delay, the case was referred to a magistrate judge on May 30, 1980, for trial on the issues of expungement and damages, after the parties consented to trial and entry of judgment by a magistrate judge pursuant to 28 U.S.C. § 636(c). On the eve of trial, the U.S. Attorney informed the court that he was withdrawing from representation of defendants in their individual capacities; he was only authorized to defend them in their official capacities.
 
 
 6
 The trial on the question of damages and expungement never took place. Instead, the next decade was to be spent on personal service of process questions. Between 1984 and 1986, Del Raine took various steps to serve defendants personally, as detailed below.
 
 
 7
 In 1986, the magistrate judge dismissed the case in its entirety based on: untimely service; lack of personal jurisdiction over one defendant who was served outside the state; failure to state a claim for which relief can be granted; inapplicability of respondeat superior doctrine; and qualified immunity as to certain defendants.
 
 The second remand
 
 8
 After an eight year absence, Del Raine returned to this court, and on August 14, 1987, we found that the magistrate judge had not complied with our directions, had "refus[ed], in the teeth of our remand, to resolve the issue of expungement," Del Raine v. Carlson, 826 F.2d 698, 704 (7th Cir.1987) ("Del Raine II "). While a service of process issue had arisen since the last remand, we found that this was no excuse for ignoring our directions regarding the expungement issue. As we stated in Del Raine II, this service issue "could have no effect on the part of the complaint that sought relief from the defendants in their official capacities." 826 F.2d at 704. Thus, we were forced to remand the case once again. We directed the magistrate judge to order defendants to expunge the disciplinary record.
 
 
 9
 In regard to the issue of personal service on defendants, we instructed the magistrate judge to develop his analysis and include consideration of five specific factors on the issue of good cause for failure to serve defendants in a timely fashion.
 
 
 10
 On November 23, 1988, the magistrate judge, on the second remand, again dismissed the cause without prejudice for lack of timely service.
 
 The third remand
 
 11
 The case returned to this court and we found that the magistrate judge had utterly failed to address the five "good cause" factors listed in our previous opinion. So, in 1990 we again were compelled to reverse and remand for a determination on whether or not Del Raine timely served defendants. Del Raine v. Carlson, No. 89-1165 (7th Cir. May 11, 1990) (unpublished order) ("Del Raine III ").[3] We wrote that the magistrate judge "certainly was not free to disregard this court's instructions on remand." Del Raine III, at 4.
 
 
 12
 District court proceedings following the third remand
 
 
 13
 Following our most recent remand in 1990, the district court entered an order on March 9, 1994, dismissing the case for failure to effectuate timely service of process on all but one defendant; for lack of personal involvement of the one defendant who was timely served; and because the doctrine of qualified immunity "applies to the issue of administrative placement of the plaintiff in the federal prison at Marion." Del Raine v. Carlson, 153 F.R.D. 622, 624 (S.D.Ill.1994). That order was docketed on March 21, 1994.
 
 DISCUSSION
 I. Appellate Jurisdiction
 
 14
 On April 15, 1994, plaintiff filed a timely notice of appeal to the district court[4] from the March 9, 1994 order, and the district court forwarded it to this court. The appeal was docketed in this court as No. 94-1881. Del Raine quickly protested, stating that he had meant to appeal "to the district court, not the seventh circuit." In a document entitled "motion to Clarify/Protect the Record," dated May 2, 1994, Del Raine explained that he was under the impression that he had 15 days to "object or appeal" to the magistrate judge's March 9, 1994 order, and therefore on March 23, 1994 he had mailed to the district court a motion for extension of time. He continues:
 
 
 15
 Upon determining that I had 60 days to appeal to the district court judge, I mailed a notice of appeal, filed on April 15, 1994 and stated, in part, "Upon receiving the court's March 31, 1994 order last night denying my extension of time, I now file this notice of appeal (to the district court judge)." I meant that I would not appeal to the Seventh Circuit but to the district court, and this was meant partly to clarify the record as to my request for a 15 day extension. Therefore, the appeal papers sent to me by the district court and the seventh circuit clerk will not be utilized.
 
 
 16
 We construed this as a motion to voluntarily dismiss the appeal, and we permitted the dismissal. Fed.R.App.P. 42(b).
 
 
 17
 On May 3, 1994, Del Raine mailed to the district court his objections to the March 9, 1994 order. On June 20, 1994, the district court granted defendants' motion to strike the objections, without explanation. On June 29, 1994, therefore, Del Raine filed another notice of appeal in this court, docketed as No. 94-2595. On July 15, 1994, this court entered an order to show cause why appeal No. 94-2595 should not be dismissed, stating:
 
 
 18
 A preliminary review of the short record indicates that this appeal is either too late or too early.... In this case, the order dismissing appellant's case was entered [docketed] on March 21, 1994, and the notice of appeal was filed on June 29, 1994, over one month late.... On the other hand, the district court has not entered a Rule 58 judgment in the case. And, of course, a party may wait for the separate judgment under Rule 58 to appeal.
 
 
 19
 On August 15, 1994, at Del Raine's request, the district court entered a Rule 58 judgment nunc pro tunc to March 9, 1994. On August 18, 1994, plaintiff filed a new notice of appeal, docketed as No. 94-3101. We consolidated the still-open appeal in No. 94-2595, and the newest appeal in No. 94-3101, for purposes of briefing and decision.
 
 Appeal to wrong court
 
 20
 The problem involves the effect of filing the appeal to the wrong court, i.e., filing the appeal to the district court judge absent the requisite consents. The parties consented to having a magistrate judge enter a final decision in the case pursuant to 28 U.S.C. § 636.[5] Upon entry of judgment by the magistrate judge, "an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3); see also Fed.R.Civ.P. 73(c); Fed.R.App.P. 3.1. If the parties prefer to have the district court hear the appeal from the magistrate judge's decision, they must "further consent to appeal on the record to a judge of the district court" at the "time of reference to a magistrate." 28 U.S.C. § 636(c)(4); see also Fed.R.Civ.P. 73(d); Fed.R.App.P. 5.1.[6]
 
 
 21
 Del Raine explains that he meant the appeal not to be a Rule 59 or Rule 60 motion, but instead to be "an appeal to the district judge from the magistrate's decision." He adds:
 
 
 22
 [A]fter receiving help from a clerk in the prison law library, it would seem that I did appeal to the wrong court. I thought that it was mandatory to first appeal to the district court based on my reading of Taylor v. Oxford, 575 F.2d 152 (7th Cir.1978) which held that no appeal could be taken to the Court of Appeals from a "judgment" entered by the magistrate.... So, evidently I should have appealed to the Court of Appeals--after waiting for a Rule 58 judgment. As I now understand the appeal procedure, the "entitlement" of the Order, Report, or Findings determines what court one is to appeal to. I was not aware of that distinction when I first appealed to this court.
 
 
 23
 The consent form in this case indicates that the parties consented to having the appeal heard by the court of appeals; therefore, the appeal should have come directly to this court. See Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc., 53 F.3d 851, 851 (7th Cir.1995); Atlantic Mutual Ins. Co. v. Northwest Airlines, Inc., 24 F.3d 958 (7th Cir.1994). Nevertheless, Del Raine's attempts to file the appeal to the district court did not destroy our jurisdiction over this appeal. See Mitchell v. Glover, 996 F.2d 164, 165 (7th Cir.1993) (where only plaintiff chose to have appeal heard by district court, and defendants did not consent, district court's sua sponte transfer to the court of appeals was proper; but plaintiff was thereafter permitted to dismiss the appeal voluntarily pursuant to Fed.R.App.P. 42(b); upon returning to the district court, however, that court again found that it did not have jurisdiction because both parties had not consented to appeal before the district court; plaintiff returned to the court of appeals, which granted his motion to recall the mandate and reinstate the initial appeal).
 
 
 24
 The district court, recognizing that no consent existed to file an appeal to the district court, should have entered an order transferring the matter to the court of appeals pursuant to 28 U.S.C. § 1631.[7] (Under § 1631, the appellant gets the benefit of the filing date on which the notice of appeal was filed, despite the fact that it was filed in the wrong court.) In a case such as this, the district court could have at least notified the pro se appellant in the dismissal order that he was appealing in the wrong court, instead of just stating that the dismissal was made on the ground that the magistrate judge's decision was a "final, appealable order." Cf. State of Illinois v. Schweiker, 707 F.2d 273. 288-89 (7th Cir.1983) (discussing need for clearly marked jurisdictional lines in appeals from HHS disallowances of items for federal reimbursement, because "[a] litigant ought to know whether he belongs in the district court or the court of appeals"; the "most cataclysmic consequence of mistaking the court that has jurisdiction [would be] finding out that you are in the wrong court after the time to appeal to the right one has run out--[which] can be avoided ... by filing petitions for review in both courts, as Illinois did here, [and] that is not a satisfactory solution").
 
 
 25
 Even if the parties here had consented to appeal to a judge of the district court, such a consent "does not create a permanent and nonwaivable jurisdictional bar to appeal to this court," where the appeal was referred to the court of appeals and briefed without objection from the parties. Dixon v. Ylst, 990 F.2d 478, 479 (9th Cir.1993) (court of appeal exercises appellate jurisdiction absent objection from the parties); Oliver v. Collins, 904 F.2d 278, 279-80 (5th Cir.1990) (court of appeals has jurisdiction where absence of objection constituted waiver of original agreement to appeal to a judge of the district court).[8] It would make little sense to transfer the appeal to a judge of the district court since the statute is designed to create alternate forums for appeal, not to "create a permanent and nonwaivable jurisdictional bar to appeal to" a court of appeals. Ridings v. Lane Co., 862 F.2d 231, 233 (9th Cir.1980). See generally, Charles A. Wright & Arthur R. Miller, 15A Federal Practice and Procedure § 3901.1 (1992) (concluding that the quoted statement in Ridings is "fully persuasive"). Cf. United States v. Smith, 992 F.2d 98, 99 (7th Cir.1993) (identifying court of appeals instead of district court as body reviewing misdemeanor conviction entered by magistrate where criminal code provides for only one avenue of appeal--the district court; only civil rules permit the parties to bypass review in the district court and proceed directly to the court of appeals).
 
 Timeliness of appeal
 
 26
 The attempted appeal to the district court was filed in a timely manner. The objections[9] were filed on May 6, 1994, within 60 days of the March 21, 1994 judgment; therefore, we consider the appeal timely in this court, also. See United States v. Smith, 992 F.2d 98, 99 (7th Cir.1993) (notice of appeal from magistrate's final judgment was filed in timely manner, but in appellate court instead of district court; government had fair notice that defendant was appealing and did not complain that defendant was in wrong court), citing United States v. Musa, 946 F.2d 1297, 1301-02 (7th Cir.1991) (designation of wrong court of appeals in timely notice of appeal did not bar review).
 
 
 27
 Defendants argue that plaintiff abandoned his timely April 15, 1994 appeal: "Del Raine chose his remedy and abandoned it." (Appellees' brief, p. 11) Defendants accuse Del Raine of "orchestrating" much "confusion and delay." (p. 10) They add:
 
 
 28
 The fact that he chooses to squander those opportunities [by dismissing the initial appeal] while geometrically increasing the volume of litigation that this court and the district court must contend with is contemptuous. (Appellees' brief, p. 12)
 
 
 29
 This is not a case where a plaintiff voluntarily dismissed an appeal in order to return to the district court to attempt to file a Rule 59 or 60 motion for reconsideration (labeled "objections") in an untimely manner, and then attempted to untimely reinstate the appeal he had voluntarily dismissed.
 
 
 30
 Defendants also argue that plaintiff should not benefit from the absence of a Rule 58 judgment, that the time-for-appeal clock should not be restarted on August 12, 1994, when the Rule 58 judgment was finally entered.
 
 
 31
 It could be argued that when he filed an appeal (notwithstanding the fact that he later voluntarily dismissed it), Del Raine waived the need for a separate Rule 58 judgment. See Shalala v. Schaefer, 113 S.Ct. 2625, 2632 (1993); Bankers Trust Co. v. Mallis, 435 U.S. 381, 384, 388 (1978); Exchange National Bank of Chicago v. Daniels, 763 F.2d 286, 298 (7th Cir.1985) (prior to entry of Rule 58 judgment, losing party "may appeal but may also elect to wait"); Ozikundo v. McGaw YMCA, 39 F.3d 166, 167 (7th Cir.1994) (loser decided not to wait for Rule 58 judgment, and "that was his privilege"). After all, on April 15, 1994 he timely appealed the March 9, 1994 dismissal order.
 
 
 32
 Ultimately, though, backtracking to obtain a Rule 58 judgment is of little, if any, significance. The decisive impediment to appellate jurisdiction at this point lies in what happened before the Rule 58 judgment was obtained (notwithstanding its nunc pro tunc designation).
 
 
 33
 The voluntary dismissal and entry of a Rule 58 judgment, therefore, do not affect our analysis, since we find even without those steps, the appeal was timely--simply filed in the wrong court. We conclude that we have jurisdiction to hear this appeal from the magistrate judge's March 9, 1994 judgment, treating the "objections" as a timely appeal which should have been transferred to this court.
 
 
 34
 II. Good Cause for Failure to Personally Serve Defendants
 
 
 35
 In our 1987 opinion in Del Raine II, we found that the magistrate judge's analysis of five particular good cause factors[10] was not adequate. 826 F.2d at 705. We now review the magistrate judge's 1994 analysis of each of those factors. To do so, we find it is necessary to delve into some of the history of this case as it applies to each of the factors.
 
 
 36
 We first touch on the general principles that guide us in our review. Personal service of process is covered by Fed.R.Civ.P. 4(d)(1). Robinson v. Turner, 15 F.3d 82, 84 (7th Cir.1994); Sellers v. United States, 902 F.2d 598, 603 (7th Cir.1990). If a plaintiff fails to effectuate service within the 120-day period prescribed by federal rules, the case shall be dismissed without prejudice. Sellers, 902 F.2d at 601. Failure to satisfy the personal service requirement can be excused if plaintiff can show "good cause" for the failure. Fed.R.Civ.P. (m). A good cause determination involves discretionary conclusions that will not be disturbed absent an abuse of discretion. Floyd v. United States, 900 F.2d 1045, 1046 (7th Cir.1990); Geiger v. Allen, 850 F.2d 330, 333 (7th Cir.1988).
 
 
 37
 In 1984, when Del Raine's service of process difficulties began, this provision was found under Fed.R.Civ.P. 4(j). The "good cause" requirement was moved to Rule 4(m) in the 1993 revisions of Rule 4, with a significant change, permitting the district court to "relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." Fed.R.Civ.P. 4(m) Advisory Committee Note (1993) (emphasis added).[11] See generally Wright & Miller, 4A Fed.Prac. & Proc.Civ.2d § 1137 (1995 supplement). While this circuit has not yet addressed the issue,[12] we note that several other circuits have retroactively applied the new Rule 4(m) and its discretion to decline to dismiss even where no good cause has been shown.[13] Espinoza v. United States, 52 F.3d 838, 840 (10th Cir.1995); Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir.1995). We agree with the retroactive application of Rule 4(m), and find that it can be applied in the present case. Nevertheless, we first determine whether good cause has been shown. See Petrucelli, 46 F.3d at 1306 n. 7 (the fact that "relief may be granted" under Rule 4(m) should be "factored into the analysis only after a determination has been made that good cause is lacking").
 
 
 38
 On July 31, 1984, the magistrate judge entered an order granting Del Raine 60 days to secure service. We are unsure why he was given 60 days, instead of 120 days pursuant to Fed.R.Civ.P. 4(j).[14] Regardless, Del Raine did not secure service on anyone but Carlson, the Director of the Bureau of Prisons, within either a 60-day or a 120-day time limit. Defendants were not served until later in 1985. The court is required to ask, therefore, whether there was good cause for this delay. See Fed.R.App.P. 4(m). Defendants argue that plaintiff "did very little, if anything [in the 120-day period], other than to serve interrogatories on Carlson." (Appellees' brief, p. 16) We disagree.
 
 
 39
 Del Raine was busy in 1984 and 1985: In June 1984, interrogatories were mailed to Carlson, seeking the addresses of the other defendants. There was no response. On July 31, 1984, the magistrate judge gave Del Raine 60 days to complete service. At about this time, Del Raine's attorney withdrew from the case, and on August 13, 1984, additional interrogatories were mailed by Del Raine's new attorney to Carlson. (In fact, Del Raine has sent a steady stream of interrogatories and requests for documents since 1973; no response has ever been received to most of these requests.) On August 17, 1984, counsel requested and received alias summons; these were mailed to Carlson along with interrogatories on August 20, 1984. Carlson purposely avoided service by refusing to acknowledge the mailing. Del Raine, 153 F.R.D. at 631 ("Carlson refused to acknowledge ... service" by mail). Cf. Sellers, 902 F.2d at 602 ("good cause" established by former warden's "refusal to acknowledge service [by mail], coupled with the Marshal's failure to follow up with personal service"). On October 17, 1984, Carlson was served. This was all within the 120-day period.
 
 
 40
 After the 120-day period, the struggle over disclosing defendants' addresses continued. On May 15, 1985, defendants filed a motion for protective order against dissemination of prison employees' addresses, and on June 7, 1985, this motion was granted.
 
 
 41
 It was not until May 31, 1985 that Carlson finally provided addresses for nine of the defendants. Within four days[15] after the addresses were provided, Del Raine's attorney filed a motion for extension of time to complete service. Fed.R.Civ.P. 6(b). The motion stated that having received the May 31, 1985 response from Carlson, it appeared that the defendants were now "scattered throughout the country," and that service by mail would "probably be futile, and certainly time consuming, since this counsel's experience with individual federal defendants is that they ignore service by first class mail." The motion added that Del Raine was indigent and could not pay for process servers. Del Raine asked to have the United States Marshals Service appointed to serve the defendants.[16]
 
 
 42
 On June 27, 1985, this motion for extension of time and appointment of the marshals service was granted. The magistrate judge made no mention of the request for additional time. (Magistrate Judge Cohn, in 1994, summarily discounted the significance of granting that motion, asserting that since only a "portion of the motion" was expressly ruled on, and the extension of time was not addressed, it must have been concluded that "plaintiff did not request an extension of time in sufficient time to establish good cause." 153 F.R.D. at 631-32.)
 
 
 43
 Del Raine's efforts at service continued. On July 7, 1985, new alias summons were issued as to each of the nine defendants for whom addresses had been provided. The marshals were somewhat lax in completing service, taking as long as seven months to effect service, but finally seven defendants were successfully served.[17] Cf. Graham v. Satkoski, 51 F.3d 710, 713 (7th Cir.1995) (remanding to permit district court to evaluate Marshals Service's efforts). As late as September 1991, the district court entered an order directing defendants to provide the clerk of court with current addresses where summons and complaints may be personally served on six of the unserved defendants.[18]
 
 
 44
 It would seem, therefore, that at a minimum Del Raine was persistent in his attempts, from a jail cell, to have defendants served. That he could have been more persistent is not dispositive. As we stated in our 1990 order, a discussion focusing only on the 120-day period after July 31, 1984 is, "to a large degree, superfluous: we acknowledged in Del Raine II that Del Raine never served the defendants nor followed up his later attempts at service within the time prescribed by the magistrate." Del Raine III, at 4 n. 1. Thus, the five factors we listed in Del Raine II--and re-listed in Del Raine III--are crucial.
 
 Interrogatories seeking addresses
 
 45
 In our 1987 opinion, we noted that the attempt to obtain defendants' addresses through "interrogatories directed to Carlson was cumbersome and possibly unnecessary (and in any event belated, for as a defendant in his official capacity he had been subject to discovery since 1973). Because prison officials do not want to give their home addresses to prisoners, the U.S. Marshals Service might have agreed with Del Raine's lawyer to serve the other defendants without his first giving their addresses to the Service; at least the lawyer should have tried this route. After 11 years, punctilious promptitude in effecting service is not an unreasonable requirement." Del Raine II, 826 F.2d at 705.
 
 
 46
 Magistrate Judge Cohn, in his 1994 decision, simply stated that it was "unfortunate[ ]" that Carlson failed to answer the interrogatories until seven months later. He concluded, though, that Del Raine could not "rely on the fact that Carlson was dilatory in supplying the defendants' addresses." 153 F.R.D. at 631.
 
 
 47
 In this case, however, Del Raine made numerous attempts to get addresses of the defendants so that he could complete service on them. The magistrate judge's classification of these efforts as nothing more than wasted, "fruitless efforts," 153 F.R.D. at 631, ignores the fact that at least one defendant was avoiding service. Del Raine was hindered by defendant Carlson's refusal to answer repeated attempts for information. In regard to the belief that Del Raine should have filed a motion for extension of time[19] prior to obtaining the addresses of defendants, we note that in 1984 and 1985, he did not have the benefit of our 1990 opinion in Sellers, where we announced a new rule:
 
 
 48
 Our impression from a series of cases is that prisoners get the runaround, no matter how hard they try to follow the Department [of Justice's] preferred methods of inquiry.... If the Department of Justice declines to furnish the address to its own employee, the Marshal, that hard-nosed attitude satisfactorily explains a prisoner's inability to serve papers within 120 days. How is the prisoner to obtain information the Bureau of Prisons will not entrust to a Marshal? We join the Ninth Circuit in holding that when the district court instructs the Marshal to serve papers on behalf of a prisoner, the prisoner need furnish no more than the information necessary to identify the defendants. Sellers, 902 F.2d at 602.
 
 
 49
 Cf. also Geller v. Newell, 602 F.Supp. 501, 501-02 (S.D.N.Y.1984) ("While it would be prudent for a plaintiff who will be unable to complete service within the statutory period to move for an enlargement of time under Rule 6(b) prior to the running of the 120 days, the failure to do so does not mandate dismissal under Rule 4(j)").
 
 
 50
 In addition, faulting Del Raine for failing to inquire about defendants' addresses at their "place of business" is absurd, given the fact that Del Raine repeatedly attempted to do just that, through his interrogatories to their boss, Carlson, and the fact that a court order was entered prohibiting disclosure of the addresses to Del Raine. Defendants' argument that Del Raine "did not even file a motion to compel a response to the interrogatories," overlooks Del Raine's repeated, futile acts of serving the interrogatories, as defendants' attorney continued to ignore them. Also, motions to compel were generally useless in this case. There were many of them, including a "motion for order compelling discovery" filed in early 1980, asking for an order forcing Carlson, along with the wardens at Leavenworth and Marion, to answer interrogatories. (Exhibit G to Appellant's brief) There was also a motion for order compelling discovery in August 1991 (Exhibit E to Appellant's brief); and a Request for Responses to interrogatories and to requests for production of documents filed throughout the 1970's and 1980's (Exhibit C to Appellant's Brief). We reject defendants' accusation that Del Raine simply "chose the tactic of delay." (Appellees' brief, p. 20)
 
 
 51
 Defendants' failure to complain of lack of personal service
 
 
 52
 In continuing our good cause analysis, we are concerned that defendants participated in the suit without complaining of lack of service for many years. Their only response is that until July 31, 1984, the case was treated as a habeas action, which does not requiring personal service. The magistrate judge agreed, finding that "none of the 14 defendants were served personally with regards to the Bivens claim and the case proceeded on the habeas corpus claims." 153 F.R.D. at 629. These defendants had "no idea [plaintiff had] filed Bivens suit against them." 153 F.R.D. at 629.
 
 
 53
 Belatedly pretending that nothing but a habeas corpus action was encompassed in Del Raine's suit is not persuasive. Whatever characterization was given for a portion of the complaint, Del Raine was clearly seeking damages, too. The 1973 complaint specifies that it is seeking "monetary relief." And in 1979 we remanded specifically for consideration of the damages issue. It would be impossible for defendants not to know that a damages claim was included along with the habeas corpus action.
 
 
 54
 Also in relation to the defendants' failure to complain, in Del Raine II, we found it of some significance that on March 22, 1985, plaintiff filed an amended complaint.
 
 
 55
 The failure to complain cannot be attributed to the defendants, who so far as appears didn't even know they had been sued. But by the time the magistrate, without objection by any defendant, allowed Del Raine to file an amended complaint on March 22, 1985, one of the defendants, Carlson, had been served and was being represented in his personal as well as official capacity by the U.S. Attorney, who failed to object. Del Raine II, 826 F.2d at 705.
 
 
 56
 The magistrate judge in 1994 found the filing of the amended complaint irrelevant because it would not toll the 120-day period, and "these defendants were wholly unaware that they had been sued." 153 F.R.D. at 628-29. The magistrate judge added: "These unserved defendants cannot be expected to know they were being sued for an event which occurred 12 years" earlier. 153 F.R.D. at 628. The magistrate judge insisted that a plaintiff must first serve defendants, "and later amend" the complaint. To find good cause otherwise "would put the cart before the horse." 153 F.R.D. at 629. "The purpose of an amended complaint is not to gain an extension of time...." 153 F.R.D. at 628.
 
 
 57
 This rationale ignores the fact that in our 1987 opinion, we acknowledged that a new 120-day period would not be triggered by the filing of an amended complaint, but went on to explain that the amended complaint was of some relevance because by the time it was filed the U.S. Attorney failed to object to the lack of service to defendants, notwithstanding the fact that he was then representing Carlson (who had been served) in his personal and official capacities. Del Raine II, 826 F.2d at 705.
 
 Notice to U.S. Attorney
 
 58
 Another point of concern is that the U.S. Attorney's office was served in 1973, and has represented defendants in their official capacities since that time. In our 1987 opinion we wrote: "The defendants' lawyer of choice to represent them in their personal as well as official capacities was in fact served within days of the commencement of the suit back in 1973. The issue of timely service arises because he withdrew for a time, only to be reinstated later." Del Raine II, 826 F.2d at 705. In our 1990 order we stated that this factor was of crucial importance. Del Raine III. The magistrate judge in 1994 disagreed, based on the argument that defendants had "no idea" there was a Bivens action filed against them." 153 F.R.D. at 629. He concluded: "Service on the defendants in their official capacities does not amount to service in their individual capacity." 153 F.R.D. at 629.[20]
 
 
 59
 We assume, as the district court did, that Del Raine justifiably relied--until July 1984--on the district court's 1973 error in stating that service on the U.S. Attorney was sufficient service on all defendants.[21] In our 1987 opinion we noted that this alone would not be a valid excuse for the delay in serving defendants, but went on to say that "the 1973 ruling does not stand alone." Del Raine II, 826 F.2d at 704. This court explained in 1990:
 
 
 60
 That the defendants' lawyer of choice, who withdrew but was later reinstated was "in fact served within days of the commencement of the suit back in 1973" suggests that the defendants were well aware at all times of the pending suit (and may support Del Raine's contention that they deliberately avoided it). Del Raine III, at 4, quoting Del Raine II, 826 F.2d at 705.
 
 
 61
 Service of the complaint on the U.S. Attorney would not usually constructively notify the individual defendants that they were being sued in their individual capacities. See Moore v. State of Indiana, 999 F.2d 1125, 1130 (7th Cir.1993) ("as a matter of law, ... the putative defendants' knowledge of the § 1983 action against them in their personal capacities can not be imputed from the service of process on the Attorney General in a drastically different type of action, the original habeas corpus proceeding," which was later turned into a § 1983 action).
 
 
 62
 We note, however, that in the 1993 amendments to Rule 4, the advisory committee's note to Rule 4(m) refers to Rule 4(i)(3) as a "specific instance of good cause." Rule 4(i)(3) provides:
 
 
 63
 The court shall allow a reasonable time for service of process under this subdivision for the purpose of curing the failure to serve multiple officers, agencies, or corporations of the United States if the plaintiff has effected service on either the United States Attorney or the Attorney General of the United States.
 
 
 64
 The advisory committee's note to Rule 4(i) states that the rule "saves the plaintiff from the hazard of losing a substantive right because of failure to comply with the requirements of multiple service under [Rule 4(i) ]." Fed.R.Civ.P. 4(i) advisory committee's note (1993). See also Espinoza, 52 F.3d at 842 ("We assume, without deciding, that Rule 4(i)(3) serves as an exception to Rule 4(m) by extending the 120-day time limit for service for a 'reasonable time' in cases where the plaintiff has properly effected service on either the United States Attorney or the Attorney General, within the 120-day period").
 
 Absence of prejudice
 
 65
 In our 1987 opinion, we noted that "defendants do not argue that the long delay in bringing the damages phase of this suit to a head will make it harder for them to defend the suit." Del Raine II, 826 F.2d at 705. Defendants offered little to the magistrate judge either. In a memorandum, they argued: "To say that the defendants have not been prejudiced by that delay is as ludicrous as saying that the plaintiff has not been prejudiced by that delay. Delay prejudices all parties." (Docu. 234, pp. 2-3) The magistrate judge, having no evidence of prejudice, feebly speculated: "Presumably, defendants' abilities to produce documents, let alone remember the incidents surrounding their creation, are prejudiced by the unusually lengthy delay occasioned by the court's and Del Raine's errors." 153 F.R.D. at 630. In this appeal, defendants do nothing more than echo the magistrate judge's speculation.[22]
 
 
 66
 The lack of prejudice to defendants is a relevant factor in determining whether a case should be dismissed for failure to timely serve defendants. Tso, 969 F.2d 373, 377 (7th Cir.1992); Floyd v. United States, 900 F.2d 1045, 1049 (7th Cir.1990). The fact that defendants may have problems with witnesses who do not remember why Del Raine was placed in segregation, or problems with lost documents, does not mean it would be fair to force Del Raine pay the price where much of the delay was caused by the courts and defendants.
 
 
 67
 If wardens and guards do not like the prospect of discovering, many years after events, that they must stand trial on subjects they have forgotten, they should inform the Department of Justice that it is better to facilitate prompt service than to postpone the evil day. The Department's current policy of frustrating prisoners' attempts to accomplish service complicates litigation and, as this case illustrates, keeps suits alive for years after they could and should have been resolved. Sellers, 902 F.2d at 603 (comparing the delay in that case to the delay of the period 1973-1987 discussed in Del Raine II ).
 
 
 68
 The magistrate judge found in 1994 that Del Raine could not show a lack of prejudice to defendants: "The events surrounding this lawsuit occurred nearly 22 years ago. The defendants' memory regarding the placement of Del Raine in solitary confinement in 1972, is surely more cloudy today then it would have been if service was effectuated in 1973." 15 F.R.D. at 630. What is there to remember? The district court found in 1974, after a bench trial, that Del Raine had been denied due process; the only remaining question is damages for wrongful confinement in segregation, something which does not require memory of the events leading up to the solitary confinement.
 
 Extraordinary delays
 
 69
 This brings us to the final factor we considered significant in the good cause analysis: the correlation between the delayed service and the painstakingly slow pace of the judicial proceedings in this case. In our 1987 opinion, we noted that "prompt service would not have eliminated most of the delay, which is due primarily to the length of time Del Raine's first appeal was gestating in this court and to the sluggishness with which the magistrate conducted the proceedings on remand." Del Raine II, 826 F.2d at 705. However, the magistrate judge in 1994 found that the delays were mutually exclusive. He explained:
 
 
 70
 The judicial delay and delay in serving the defendants are mutually exclusive; one did not cause the other.... Del Raine's failure to properly serve the defendants in the first instance was not a product of court detainment, but rather was an error committed by him and his attorney. The plaintiff's further delay in serving the defendants after the magistrate judge granted the extension of time[23] likewise was not generated by the court's extended proceedings.... 153 F.R.D. at 630.
 
 
 71
 This finding is difficult to fathom. That the magistrate judge found nothing else of import to say about the appalling delays involved here baffles us. The case was filed in 1973; tried--and plaintiff won--in 1974; lingered on appeal for five years prior to remand in 1979; languished for four more years before a trial on damages was scheduled for October 1983; delayed when on the eve of trial the U.S. Attorney withdrew; postponed nearly a year for the magistrate judge to rule on the propriety of the U.S. Attorney's withdrawal; languished until early 1986, when it was dismissed for failure to timely serve defendants; returned to the Seventh Circuit where we ruled in 1987 that the magistrate judge had failed to adequately address good cause and expungement; stayed in the magistrate judge's hands for three years; returned to the court of appeals in 1990, and was again reversed and remanded for ignoring our instructions; sat for three years before the magistrate judge ordered, on February 22, 1993, that the parties file briefs on the five good cause factors we had pointed out in 1987; held for another year before the magistrate judge decided again that service was untimely; returned to this court, and was voluntarily dismissed because the district court would not accept an appeal from the magistrate judge, did not inform Del Raine that he should either have defendants consent or go straight to the court of appeals, and did not transfer the appeal, instead dismissing it outright; and finally returned to this court for the present proceeding. Also, apparently during this two-decade quagmire, Del Raine filed five petitions for a writ of mandamus, trying to expedite the process, but to no avail. (Appellant's reply brief, p. 3) In 1987, we thought this case exhibited "the characteristic pathology of contemporary federal litigation, in which substantive and procedural complexity interact to create monumental confusion and delay." Del Raine II, 826 F.2d at 701. Now, nine years later, we find it has mutated into a legal monstrosity.
 
 
 72
 Nevertheless, defendants and the magistrate judge insist that we should focus on the fact that all sins related to the courts' or defendants' delays should be forgiven if they occurred prior to the time when Del Raine was given a "second bite at the apple," 153 F.R.D. at 630, when on July 31, 1984 he was given an additional 60 (or 120) days to serve defendants, and yet managed to serve only Carlson. Defendants argue: "While it may certainly be appropriate for everyone to be chagrinned by the length of time it has taken to bring this case to final resolution, that delay is independent of Del Raine's delay in obtaining services." (Appellees' brief, p. 19) The magistrate judge pointed out other steps he thought Del Raine could have taken:
 
 
 73
 Del Raine was required to pursue other alternative methods of locating and serving the defendants, such as inquiring at the post office, hiring a private process server, inquiring at the defendants' place of business, or at least moving for an extension of time prior to the expiration of time under Federal Rule of Civil Procedure 6(b). 153 F.R.D. at 631.
 
 
 74
 Requiring an indigent, incarcerated plaintiff to hire private process servers throughout the country to track down these defendants is senseless. In regard to whether a motion for extension of time should have been filed, we note that a plaintiff's delayed Rule 6(b) motion would normally work against him in a good cause determination. As we pointed out in our 1990 order, many of the delays Del Raine encountered "existed primarily because he is incarcerated." Del Raine III, at 4.
 
 
 75
 True, Del Raine and his on-again, off-again appointed attorneys throughout the years are to blame for some of the two-decade long entanglement; but so too are the courts and the defendants. In particular, the magistrate judge too easily discounted Carlson's deliberate evasion of service. We cannot uphold the magistrate judge's ignoring the obvious when all he offers in place of it is a few abstract sentences regarding a causal relationship and a narrow, constricted viewing of the crucial factors. This case is less susceptible to a mechanical good cause determination than any we have seen. The contextual history must be viewed as a whole. As we noted in our 1990 order, all of the factors discussed here support Del Raine's argument that he had good cause for his inability to serve defendants within the 120-day period after July 31, 1984. Del Raine III, at 4. The magistrate judge's 1994 findings to the contrary do not convince us otherwise. In conclusion, we find that the magistrate judge abused his discretion in dismissing the action for failure to timely serve defendants. Even if good cause did not exist, we believe that the amendment to § 4(m) (previously § 4(j)) the magistrate judge (who ignored the amendment) should have relieved Del Raine of "consequences of an application of this subdivision even if there is no good cause shown." Fed.R.Civ.P.Rule 4(m) Advisory Committee Note (1993). See Espinoza, 52 F.3d at 840 (10th Cir.1995) (applying the 1993 amendment retroactively); Petrucelli, 46 F.3d at 1305 (3d Cir.1995) (same).
 
 III. Qualified Immunity
 
 76
 Both the magistrate judge and the defendants have failed to respond to Del Raine's argument that defendants waived the defense of qualified immunity by not raising it until 1986--13 years after the complaint was filed, in defendants' third motion for summary judgment. See Walsh v. Mallas, 837 F.2d 798, 799-800 (7th Cir.1988) (finding waiver of qualified immunity defense by prison officials, notwithstanding fact that defense was raised in their Answer, because defense was not raised in prior appeal).
 
 
 77
 In Del Raine II, we noted the magistrate judge's failure to be specific about its findings on qualified immunity. "Which claims? Which defendants? We are not told." Del Raine II, 826 F.2d at 707. The magistrate judge in 1994 found that "issues concerning placement of inmates within the prison system continued to be litigated long after this case began [in 1973]." 153 F.R.D. at 633. He concluded that based on the holding in Meachum v. Fano, 427 U.S. 215, 224-25 (1976), where "it was established that inmates have no liberty interest in remaining in a prison's general population," and the holding in Hewitt v. Helms, 459 U.S. 460 (1983), "that segregation is the sort of confinement that inmates should anticipate receiving at some point in their incarceration and does not involve an interest independently protected by the due process clause," the issue of segregation was "not resolved until 1983, long after this case began," and therefore defendants were entitled to qualified immunity. 153 F.R.D. at 633.
 
 
 78
 This ignores the fact that back in 1974, after a bench trial, the district court found that Del Raine was entitled to a hearing. It also blatantly ignores our opinion in DelRaine II, where we pointed to Gray v. Creamer, 465 F.2d 179, 185 (3d Cir.1972) and agreed that in 1972 a hearing would have been required. We wrote:
 
 
 79
 But it has never been determined what the true reason for Del Raine's protracted confinement in segregation was. There is some evidence that it was as punishment for his alleged participation in the strike. If so he was entitled to certain procedural safeguards, which the district court found back in 1974 he was not given; and this entitlement was clearly established in the case law in 1972. Del Raine II.
 
 
 80
 See also Adams v. Carlson, 488 F.2d 619, 624-25 (7th Cir.1973) (setting out "bare minimum" due process requirements for 1972 placement of 115 inmates at Marion into segregation; " "candidates for segregation sufficiently severe to impose a 'grievous loss' of liberty were entitled to 'an adequate and timely written notice of the charges, a fair opportunity to explain and to request that witnesses be called or interviewed, and an impartial decision maker.' There were the bare minima."), quoting United States ex rel. Miller v. Twomey, 479 F.2d 701, 718 (7th Cir.1973).
 
 
 81
 Moreover, it fails to address the fact that Del Raine raises Eighth Amendment claims regarding his time in segregation. See Adams v. Carlson, 488 F.2d at 636 (finding violation of eighth amendment for 1972 placement of Marion inmates in segregation for 16 months, allegedly for participating in a work strike).
 
 
 82
 Del Raine has presented sufficient facts and allegations to show that defendants violated a clearly established right. Thus, because the law here was clearly established, defendants cannot avail themselves of the qualified immunity defense against alleged violations of the due process clause or of the eighth amendment. It was error to find that qualified immunity protects defendants from liability for placing Del Raine in segregation.
 
 Absence of Personal Involvement
 
 83
 Individual liability under § 1983 must be based upon personal responsibility. Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir.1988); Schultz v. Baumgart, 738 F.2d 231, 238 (7th Cir.1984). It is not enough to merely show that the inmate has sent letters to a supervisory official. Crowder v. Lash, 687 F.2d 996, 1006 (7th Cir.1982). See also Catrabone v. Farley, No. 94-367 (N.D.Ind. Sept. 26, 1995), 1995 U.S.Dist. Lexis 16497 at * 18 (letter writing campaign is not sufficient to establish personal involvement of a prison official; collecting cases).
 
 
 84
 The amended complaint alleges that Carlson "had personal knowledge of the circumstances surrounding plaintiff's placement in segregation and the continuation of that placement, yet approved such placement and its continuation even though he knew plaintiff had not been provided the due process hearings to which he was entitled, and even though defendant Carlson had the power to terminate such segregation." (Amended Complaint, par. 18)[24]
 
 
 85
 Both the magistrate judge and defendants limited their discussion of personal involvement to Carlson. The magistrate judge in 1994 found that "a careful reading of plaintiff's complaint clearly establishes that defendant Carlson's only relationship to the alleged cause of action is due to his supervisory position with the Bureau of Prisons." 153 F.R.D. at 632.
 
 
 86
 Del Raine points out, though, that Carlson's alleged liability is not based on his supervisory position. Instead, Del Raine maintains, Carlson has previously been found to be directly involved in wrongful segregation. See Chapman v. Pickett, 801 F.2d 916, 918 (7th Cir.1986) (finding that Director Carlson was personally involved where, even after receiving letter from inmate and from inmate's legislative representative, he did nothing to release inmate from segregation, where he was placed after refusing to touch pork); Adams v. Carlson, 368 F.Supp. 1050, 1053 (E.D.Ill.1973) (where Carlson was found to be liable for the 1972 placement of Marion inmates in segregation for as long as 16 months in violation of the eighth amendment), on remand from Adams v. Carlson, 488 F.2d 619 (7th Cir.1973).
 
 
 87
 Del Raine points to letters written by and to Carlson in the period of 1972-1974 indicating Carlson's knowledge of Del Raine's segregation concerning Del Raine's requests for release from segregation. Moreover, Carlson was notified by letter from various legislators to whom Del Raine wrote. Del Raine argues that further discovery may reveal similar communications involving Carlson. See Wellman v. Faulkner, 715 F.2d 269, 275 (7th Cir.1983) ("responsibility of senior prison officials can be assumed at the pleading stage, pending discovery of those who were directly responsible for whatever deprivation may have occurred").
 
 
 88
 We conclude that personal involvement as to Carlson has been sufficiently pled under the particular facts of this unique case. In regard to the other served defendants, the question of their personal involvement has not been addressed by defendants and therefore it is waived.
 
 
 89
 Damages for Wrongful Confinement in Segregation
 
 
 90
 The district court has never addressed the issue of damages for wrongful segregation at Leavenworth and Marion.[25] It has conducted no assessment of compensatory or punitive damages, or whether Del Raine suffered any actual harm.
 
 
 91
 The Supreme Court recently ruled that not all punitive disciplinary action taken against a prisoner triggers a due process interest. Sandin, 115 S.Ct. 2293 (1995). However, we hold that this case, where the "prisoner spent more than two years in the closest confinement possible in the federal prison system," Del Raine II, 826 F.2d at 707, qualifies as the "atypical, significant deprivation," Sandin, 115 S.Ct. at 2301, requiring due process protection.
 
 
 92
 On remand, the parties should be permitted to renew or extinguish the consent to trial before a magistrate judge. The district court should then vacate the judgement insofar as it dismisses defendants who were personally served in the period of 1984-1986. Then, proceedings to determine personal involvement of defendants, and to determine the amount of damages, if any, appropriate to the wrongful confinement should be held with all due speed. Pursuant to Circuit Rule 36, a different judicial officer shall preside over the proceedings on remand.
 
 CONCLUSION
 
 93
 The judgment is VACATED in part, REVERSED in part, and REMANDED for further proceedings in conformity with this opinion.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Upon consideration of the record, the briefs, and plaintiff's statement that no oral argument is necessary, the appeal is submitted on the record and the briefs
 
 
 [2]
 The habeas corpus proceeding arises under 28 U.S.C. § 2241. The damages claim arises under Bivens v. Six Unknown Named Federal Agents, 403 U.S. 388 (1971)
 
 
 [3]
 In that order we stated:
 "Sadly, this prisoner's rights case now enters its 17th year with no end in sight. More galling, however, is the fact that the federal courts involved in the case still have not addressed the substance of the prisoner's claims. In a cruelly ironic twist--after more than a decade and a half of legal delays--the courts have focused on whether the prisoner effected timely service upon the defendants. We reluctantly reverse and remand the case with the hope that the lower court will resolve this issue once and for all." Del Raine III, at 1.
 
 
 [4]
 The notice specifically states: "I now file this notice of appeal (to the district court judge)."
 
 
 [5]
 That section provides: "Upon the consent of the parties, a ... magistrate ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case." 28 U.S.C. § 636(c)(1)
 
 
 [6]
 If the parties consent to appeal to the district court, any subsequent review by the court of appeals depends upon that court's granting of a "petition for leave to appeal by a party stating specific objections to the judgment." 28 U.S.C. § 636(c)(5)
 
 
 [7]
 This provision permits the transfer of an appeal, civil action or petition for agency review filed in the wrong court of appeals, to be transferred to the correct court of appeals. See e.g., Kolek v. Engen, 869 F.2d 1281, 1283-84 (9th Cir.1989) (using § 1631 to transfer appeal that was timely filed in the wrong court); Hempstead Co. & Nevada Co. Project v. United States Environmental Protection Agency, 700 F.2d 459, 462-63 (8th Cir.1983) (same)
 
 
 [8]
 The opposite is also true: if the parties do not agree to appeal to the district court, but the appeal is nevertheless filed in the district court without objection from any party, the district court may exercise jurisdiction to hear the appeal. Rhome v. Sullivan, 963 F.2d 691, 692 (5th Cir.1992)
 
 
 [9]
 The "objections" could be construed as a notice of appeal, since that was clearly Del Raine's intent. Defendants have suffered no prejudice, since it has been clear for years that Del Raine was attempting to appeal the magistrate judge's decision. See Foman v. Davis, 371 U.S. 178, 181 (1962) (faulty notice of appeal "did not mislead or prejudice the [appellee]" since the appellant's "intention to seek review of [the judgment] ... was manifest"); Chaka v. Lane, 894 F.2d 923, 924 (7th Cir.1990) ("misspecification of the date of judgment in a notice of appeal affects this court's jurisdiction only if the defect misleads the appellee"). See also Smith v. Barry, 112 S.Ct. 678, 682 (1992) ("If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal")
 
 
 [10]
 The factors to be considered on remand included the effect of an erroneous ruling in 1973 that service on the U.S. Attorney would constitute service on all defendants; defendants' failure to complain about late service; timely service on defendants' lawyer who later withdrew and then was reinstated as counsel; lack of hardship on defendants because of the delay; and absence of a correlation between delayed service and painstakingly slow judicial proceedings. Del Raine II
 
 
 [11]
 The text of 4(m) reads: "Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m) (1993)
 
 
 [12]
 Recently a district court in this circuit exercised its discretion under the new Rule 4(m) to grant an extension of time for service even though plaintiff had failed to show good cause for not serving defendant within 120 days. Binicewicz v. General Electric Co., No. 95 C 1828 (N.D.Ill. Oct. 25, 1995), 1995 WL 628425
 
 
 [13]
 The Order of the United States Supreme Court Adopting and Amending the Federal Rules of Civil Procedure (April 22, 1993) states that the "amendments ... shall take effect on December 1, 1993, and shall govern ... insofar as just and practicable, all proceedings in civil cases then pending."
 
 
 [14]
 Defendants state in their brief that they disagree with the district court's decision to use the 120-day period, but "do not claim that it abused its discretion in making that determination." (Appellees' brief, pp. 15-16)
 
 
 [15]
 The motion was filed June 4, 1985, returned by the clerk for a correction, and refiled on June 19, 1985
 
 
 [16]
 This is not a case where Del Raine or his attorney failed to provide the Marshals Service with the appropriate documents. Cf. Del Raine v. Williford, 32 F.2d 1024, 1030 (7th Cir.1994) (in an unrelated suit filed by Del Raine, this court affirmed the dismissal for failure to serve within 120 days where inmate Del Raine failed to give Marshals Service copies of his amended complaint within 120 days)
 
 
 [17]
 Even after this time, Del Raine continued to seek current addresses of defendants. For example, in January 1988, Del Raine filed interrogatories (seventh set) requesting the correct names and addresses of certain prison employees at Leavenworth and Marion. He also requested, pursuant to the district court's instructions given at a January 21, 1988 hearing, that defendants respond to various discovery motions, including previous sets of interrogatories and production of documents
 
 
 [18]
 These included Pringle, Malley, Stewart, Culley, Jerman, Johnson, and Daniels. (Docu. 219.)
 
 
 [19]
 See Bachenski v. Malnati, 11 F.3d 1371 (7th Cir.1993) (plaintiff's failure to move for a Rule 6(b) motion for an extension of time properly considered in finding an absence of good cause for the delay)
 
 
 [20]
 Magistrate Judge Cohn, 153 F.R.D. at 629, cited our opinion in Robinson v. Turner, 15 F.3d 82, 84-85 (7th Cir.1994), and a treatise later noted that the citation was improper, since Robinson actually states the opposite. See Charles A. Wright & Arthur R. Miller, 4A Federal Practice & Procedure § 1095 (1995 Supp.) (district court in Del Raine cites Robinson, although Robinson "actually supported opposite proposition")
 
 
 [21]
 Defendants state in their brief at page 15 that while they "disagree with the district court's determination on this point, they cannot say that he abused his discretion with respect to that point."
 
 
 [22]
 Defendants state that the magistrate judge "correctly points out that the defendants naturally have suffered prejudice by the passage of 21 years, 11 of those before any personal service was even attempted." (Appellees' brief, p. 18)
 
 
 [23]
 Cf. Tso v. Delaney, 969 F.2d at 377 (plaintiffs could not justifiably rely on district court judge's granting extension of time for service for as long as a year; such reliance was limited to two months where judge vacated the extension of time a year after granting it, but only two months after granting the extension, the judge ruled that he was going to reconsider the extension and reinstated defendants' motion to dismiss)
 
 
 [24]
 In Del Raine II, we stated that "Del Raine knows he must show the defendants' personal involvement and proposes to show that even Carlson, the head of the federal prison system, was responsible for the alleged denial of due process." 826 F.2d at 707
 
 
 [25]
 On January 23, 1992, while the decision on remand was pending, defendants filed a motion to dismiss which argued that there is no constitutional right to remain in the general population instead of in administrative segregation, citing Hewitt v. Helms, 459 U.S. 460 (1983). The district court never ruled on this motion, since it found the case must be dismissed as to Carlson on lack of personal involvement grounds, and dismissed as to other defendants for failure to serve defendants in a timely manner