William H. **BLOOM**, M.D., Plaintiff,

v.

**NEW YORK STATE COMMISSIONER OF HEALTH, Antonia Novello, Ansel Marks, Executive Secretary of the Bureau of Professional Medical Conduct, Leslie Fisher Investigator for BPMC, Stephen Bermas, ALJ for BPMC, Diane Abeloff, Legal staff, BPMC, Alexander Bateman, American Board of Neurological Surgery, Defendants.**

No. 03–CV–4174 (JS) (ARL).

United States District Court,
E.D. New York.

July 28, 2004.

William H. Bloom, Bay Shore, NY, pro se.

Toni E. Logue, Esq., Assistant Attorney General, Mineola, NY, for Defendants, Antonia Novello, Ansel Marks, Leslie Fisher, Stephen Bermas and Diane Abeloff.

Jeanine M. Caramore, Esq., L'Abbate, Balkan, Colavita & Contini, L.L.P., Garden City, NY, for Defendant, Alexander Bateman.

Eric J. Stock, Esq., Hogan & Hartson, L.L.P., New York, NY, for Defendant, American Board of Neurological Surgery.

## MEMORANDUM & ORDER

SEYBERT, District Judge:

William H. Bloom ("Plaintiff" or "Bloom"), proceeding *pro se,* commenced this action against the Defendants on August 22, 2003. The Defendants are: New York State Commissioner of Health, Antonia Novello ("Novello"); Executive Secretary of the Bureau of Professional Medical Conduct ("BPMC" or "OPMC"[1]), Ansel

---

1. The official name of the department is the Office of Professional Medical Conduct, which is a division of the New York State Department of Health. The OPMC is responsible for investigating complaints about physicians, and it also monitors practitioners who have been placed on probation. This opinion will refer to the office as either OPMC or BPMC, as the Plaintiff so refers to the office in his Second Amended Complaint.

Marks ("Marks"); BPMC staff member, Leslie Fisher ("Fisher"), who Plaintiff describes as an investigator for the BPMC; Stephen Bermas ("Bermas"), an Administrative Law Judge for OPMC; Diane Abeloff ("Abeloff"), staff attorney for OPMC; Alexander Bateman ("Bateman"), Plaintiff's former attorney; and the American Board of Neurological Surgery ("ABNS"), a private organization which administers the licensing of American neurosurgeons. Pending before this Court are Defendants' motions to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 12(b)(6). For the reasons set forth herein, Defendants' motions are GRANTED, in part, and DENIED, in part.

*BACKGROUND*

Plaintiff commenced this action on August 22, 2003. On September 24, 2003, Plaintiff filed a First Amended Complaint, as of right, with this Court. In an Order dated October 21, 2003, this Court *sua sponte* dismissed Plaintiff's First Amended Complaint, without prejudice, for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 8. Plaintiff was given leave to submit a Second Amended Complaint within 30 days. On November 5, 2003, Plaintiff submitted a Second Amended Complaint in which he alleges violations of 42 U.S.C. § 1983 during the state administrative process, administered by the OPMC, that ultimately resulted in the suspension and subsequent revocation of Plaintiff's state medical license.

The OPMC brought an action against Bloom for his alleged misconduct in conducting independent medical examinations. The OPMC hearing commenced on September 5, 2001. Plaintiff alleges that during the administrative hearing, the Defendants Bermas, Abeloff, Fisher, and Marks conspired to deprive Plaintiff of his constitutionally afforded due process. The allegations include: denial of Plaintiff's request for qualified counsel by Bermas; "encouragement of perjury" by Fisher of witnesses testifying against Bloom during the hearing, allegedly under the "guidance" of Abeloff; and "conspiracy to cover up multiple improprieties on the part of [the OPMC]" by Marks. Second Amended Complaint ¶ 4. On October 9, 2001, before the OPMC trial was adjudicated, Plaintiff consented to a resolution by signing a consent agreement providing that Plaintiff agree to his license being limited. The agreement set forth restrictions Plaintiff was to comply with and also provided that Plaintiff would not contest the charges that were brought against him. Plaintiff contends that the consent agreement was procured through fraud, coercion and intimidating tactics. Two years later, in an order dated November 17, 2003, the OPMC found that Plaintiff failed to comply with the restrictions set forth in the October 9, 2001 consent agreement, that lead to the revocation of Plaintiff's medical license. Plaintiff further alleges that his former attorney, Bateman, "deserted" him after conspiring with Bermas and Abeloff to leave Plaintiff without proper representation for the OPMC hearing in September of 2001.

Plaintiff seeks compensatory damages and injunctive relief in the form of reinstating his New York medical license, restoring his certification by the ABNS and ceasing alleged OPMC internet publications which Plaintiff claims disseminate false and defamatory information about his character.

*DISCUSSION*

A district court should grant a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v.*

*Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.* at 249, 109 S.Ct. 2893; *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (citing Fed.R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure).

On a motion to dismiss, the appropriate inquiry is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support those claims." *Harriman v. I.R.S.,* 233 F.Supp.2d 451, 456 (E.D.N.Y.2002) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). A claimant need only give a statement that gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The court notes that the Plaintiff is proceeding *pro se,* and as such he is entitled to an even more liberal standard when deciding the sufficiency of the pleadings. "As the Second Circuit has cautioned: '[i]mplicit in the right to self representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Amnay v. Del Labs,* 117 F.Supp.2d 283, 285 (E.D.N.Y.2000) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)). Furthermore, "the mandate that a *pro se* plaintiff's complaint be construed liberally makes it appropriate for the Court to consider the factual allegations in the plaintiff's opposition materials to supplement the allegations in the complaint." *Verley v. Goord,* 02–CV–1182, 2004 WL 526740, at \*5 (S.D.N.Y. Jan. 23, 2004) (citations omitted). Therefore, the Court will consider all additional memoranda submitted by the Plaintiff in determining the sufficiency of his factual allegations.

## I. ABNS

■ Plaintiff contends that he was "wrongly ... decertified" by ABNS and that such decertification was "precipitous, in error, or based on rubber stamping the State of New York's inappropriate actions." This can be construed to mean that the Plaintiff puts forth the notion that ABNS, a private organization, used the resolution of the OPMC hearing as a basis for its own decertification. Plaintiff claims that this action taken by ABNS constituted a violation of 42 U.S.C. § 1983.

■ In order for a private party to be subject to Section 1983, a two part test must be performed to determine if there is "fair attribution" to the State of the alleged conduct, i.e. "the conduct causing the deprivation of a federal right [must] be fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In order to find "fair attribution:" (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor," meaning a state official or a person who has conspired with a state official. *Id.*

As ABNS points out, the Plaintiff does not contend that ABNS granted or withdrew the certification based on any power

vested in ABNS by New York State or the Federal Government. Nor does Plaintiff allege that ABNS conspired with any state actor to perform the decertification.[2] In fact, in his reply memorandum to ABNS' motion to dismiss, Plaintiff asserts that it was OPMC, not ABNS, who actually denied him his due process. Plaintiff merely contends that ABNS, pursuant to its own private bylaws, withdrew its certification based on the outcome of the OPMC hearing.

Section 1983 actions against private individuals must be limited, lest "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Id.* Therefore, even after viewing the allegation in light of the fact that the Plaintiff is proceeding *pro se*, ABNS's motion to dismiss the Section 1983 cause of action pursuant to Rule 12(b)(6) is GRANTED.

## II. *Novello*

■ Defendant Novello is the Commissioner of the New York State Department of Health. Although the Second Amended Complaint is wholly bereft of any allegations concerning Novello, Plaintiff's memorandum in addressing the motion to dismiss gives some reason for joining Novello as a Defendant. Plaintiff states that the "Commissioner does much good work in her position ..." and that although it is not Novello who is responsible for the alleged deprivation of due process, "it is customary to sue the Commissioner...." In fact, it seems that the sole reason that Novello was joined is because she "ignore[d] ... letters of complaint" and that

she "presides over an organization known for its heavy-handedness, and outright cruelty."

Even when construed liberally, these allegations simply fail to state a claim on which relief may be granted and hence fail to comply with Federal Rule of Civil Procedure 8. Regardless of whether or not it is "customary" to sue anyone, even *pro se* complaints must raise at least some minimum level of factual support for their claims. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) ("[I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights."). Plaintiff simply makes conclusory accusations and provides not one specific fact regarding the alleged violations of Section 1983 by Novello. Because the Second Amended Complaint does not allege any personal involvement of Novello to support a claim based on Section 1983, the motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.

## III. *Bermas, Abeloff, Fisher and Marks*

■ Defendants claim that this Court lacks subject matter jurisdiction over Plaintiff's claims against Bermas, Abeloff, Fisher and Marks because Plaintiff has already challenged the judgment of the OPMC in an Article 78 proceeding in New York State Court. Indeed, the New York Supreme Court, Appellate Division, Third Judicial Department rendered a decision concerning the matter at hand in *Bloom v. New York State Department of Health,* 301 A.D.2d 881, 752 N.Y.S.2d 923 (3d Dep't 2003). In that decision, the court reviewed

---

**2.** Plaintiff does allege that a state actor, Marks, "arranged ... for the permanent loss of his certification by [ABNS]." However, Plaintiff fails to make clear any claim that ABNS conspired with Marks to act "under color" of state law for the purposes of Section

1983. *See Lugar,* 457 U.S. at 941, 102 S.Ct. 2744 ("[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor.' ...")

the consent order of Plaintiff, which suspended his license to practice medicine. Defendants correctly observe that the Rooker–Feldman Doctrine mandates that a federal district court may not review collateral attacks upon a state court determination. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (explaining that review of a final determination by a state court can be obtained only by the United States Supreme Court).

■ " '[C]laim preclusion generally does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding....' " *DiBlasio v. Novello,* 344 F.3d 292, 296 (2d Cir.2003) (quoting *Colon v. Coughlin,* 58 F.3d 865, 870 n. 3 (2d Cir.1995)). Therefore, "[D]efendants must rely on issue preclusion to support their Rooker–Feldman argument." *Id.* In order for a district court to be precluded by the Rooker–Feldman doctrine from reviewing an issue purportedly adjudicated in State court, " '(1) the issue in question [must have been] actually and necessarily decided in [the state] proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.' " *Id.* (quoting *Colon,* 58 F.3d at 869).

Deciding a federal claim in Bloom's favor would not constitute a collateral attack on the Article 78 court's determination that the consent order prevented Plaintiff from being an aggrieved party, nor would it be barred by the Rooker–Feldman doctrine. Here, Bloom contends that he did not have a "full and fair opportunity to litigate the issue in the first proceeding" *Id.* Plaintiff alleges that because his request to obtain qualified counsel was denied, he was unable to adequately litigate and defend the charges brought against him. Furthermore, the issue of due process was not "actually and necessarily decided" in the State court proceeding. The

Appellate Division merely decided that Plaintiff's execution of a consent agreement precluded that court from granting relief pursuant to Article 78 because Bloom had not exhausted all of his State administrative remedies. The issue of due process may have been raised by the Plaintiff in the Article 78 proceeding, but it certainly was not "actually and necessarily decided." The dicta of the Appellate Division, indicating the lack of merit of Bloom's substantive allegations, was not necessary to the holding of that proceeding. Therefore, this Court's review is not precluded under the Rooker–Feldman Doctrine.

### A. Absolute Immunity of Bermas and Abeloff

■ Defendants Bermas and Abeloff argue that their actions during and in preparation for the OPMC hearing are protected by absolute immunity. Defendant Bermas was acting in his role as an Administrative Law Judge while presiding over the Plaintiff's hearing. Defendant Abeloff argues that during the Plaintiff's disciplinary proceeding, she primarily presented evidence, both documentary and testimonial, in support of BPMC's charges, and acted within her statutory authority in a prosecutorial role. Absolute immunity has for centuries, in English and American courts, been afforded to protect judges from lawsuits alleging their decisions were rendered pursuant to improper motives. *See Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■ The absolute immunity of the common law still exists today. "In enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Undoubtedly, administrative law

proceedings function in a comparable atmosphere and adjudicate similar issues to those settled in judicial proceedings. *See Butz,* 438 U.S. at 512–13, 98 S.Ct. 2894 ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.") Indeed, administrative proceedings are similar to judicial proceedings in that "the disappointment occasioned by an adverse decision, often finds vent in imputations of [malice]." *Id.* at 513, 98 S.Ct. 2894 (quoting *Bradley v. Fisher,* 13 Wall. 335, 348, 20 L.Ed. 646 (1872)). Therefore, this Court recognizes that absolute immunity extends to certain state officials who take part in the BPMC's disciplinary proceeding.

"[A]djudications invariably produce at least one losing party, who would 'accep[t] anything but the soundness of the decision in explanation of the action of the judge.'" *Id.* at 509, 98 S.Ct. 2894 (quoting *Bradley,* 13 Wall. at 348). Indeed, "[i]f a civil action could be maintained against a judge by virtue of an allegation of malice, judges would lose 'that independence without which no judiciary can either be respectable or useful." *Id.* (quoting *Bradley,* 13 Wall. at 347). Hence, in his role as administrative law judge, Defendant Bermas is entitled to absolute immunity from any Section 1983 civil action based on his actions during those proceedings. *See Id.* at 513, 98 S.Ct. 2894 ("There can be little doubt that the role of the modern federal hearing examiner or administrative law judge ... is 'functionally comparable' to that of a judge.").

■ As with administrative law judges, the common law precedents also extend absolute immunity to prosecutors participating in the administrative process. *See Id.* at 509–10, 98 S.Ct. 2894 (citing *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47

L.Ed.2d 128 (1976) (holding that a state prosecutor was absolutely immune from Section 1983 liability)). Similarly, the losing party is likely to have ill thoughts about the motives and actions of the prosecuting attorney. If absolute immunity were not afforded prosecutors, there could be "an adverse effect on the functioning of the criminal justice system, not only by discouraging the initiation of prosecutions, ... but also by affecting the prosecutor's conduct of the trial." *Id.* at 510, 98 S.Ct. 2894 (citations omitted). *Butz* also extended this prosecutorial immunity to officials who perform analogous functions to those of a prosecutor. *See Id.* at 515, 98 S.Ct. 2894 ("[A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity ...") Hence, it would not be inconsistent to grant immunity to Abeloff in her role in presenting evidence and taking action against Bloom. *See Id.* at 516, 98 S.Ct. 2894 ("We can see no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before the court.").

In sum, absolute immunity is necessary to ensure that Bermas, in his role as administrative law judge, and Abeloff, in her prosecutorial role, can perform their respective functions free from the intimidation of a lawsuit by a losing party. As such, the motion to dismiss with respect to the Section 1983 claims against Bermas and Abeloff is GRANTED.

### B. *Fisher and Marks*

■ Defendants Fisher and Marks move this Court to dismiss pursuant to Federal Rule of Procedure 12(b)(5) on the ground of improper service of process. Federal Rule of Civil Procedure 4(e) administers service of process upon persons

within a district court's jurisdiction. Rule 4(e) provides that service may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected...." Fed.R.Civ.P. 4(e)(1). Plaintiff attempted to effectuate service pursuant to New York Civil Practice Law and Rules ("CPLR") § 308(2), which allows for personal service to be made

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business ... *and* by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business ... such delivery and mailing to be effected within twenty days of each other.

N.Y. C.P.L.R. 308(2) (McKinnney 2001)(emphasis added).

In an attempt to effectuate service on Defendant Fisher, Plaintiff delivered a summons and complaint to an employee of the OPMC at 433 River Street, Troy, New York. In her sworn affidavit, Fisher contends that her actual place of business is 145 Huguenot Street, New Rochelle, New York. Plaintiff also failed to mail a copy of the summons to either Fisher's last known residence or her actual place of business. In an attempt to effectuate service on Defendant Marks, Plaintiff served a summons and complaint on an employee of the OPMC office in Troy, New York. In his sworn affidavit, Marks concedes that this is his actual place of business, but contends that the Plaintiff failed to subsequently mail the summons and complaint to either his actual place of business or his residence, as required by CPLR § 308(2).

■ The Court assesses the Plaintiff's attempts to effectuate service liberally in light of the fact that he is proceeding *pro se*. However, the Court's leniency towards *pro se* litigants "does not exempt a party from compliance with relevant rules of procedural and substantive law" *Amnay*, 117 F.Supp.2d at 285 (quoting *Traguth*, 710 F.2d at 95). As such, the deficiencies in the service of process cannot be summarily overlooked.

Federal Rule of Civil Procedure 4(m) provides, in relevant part, that "provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m). Good cause, in the context of Rule 4(m), "is measured against '(1) the plaintiff's reasonable efforts to effect service, and (2) the prejudice to defendant from the delay.'" *Snall v. City of New York*, 97–CV–5204, 1999 WL 1129054, at *3 (E.D.N.Y. Oct. 19, 1999) (quoting *Nat'l Union Fire Ins. Co. v. Barney Assocs.*, 130 F.R.D. 291, 293 (S.D.N.Y.1990)). First, the Court notes that Plaintiff submits no evidence that contradicts the affidavits provided by Defendants Fisher and Marks. Still, Plaintiff did in fact attempt to serve Fisher and Marks in a diligent manner, by serving process at the OPMC, the agency with which he had his disciplinary hearing. It is also noteworthy that neither Defendants claim that a delay in proper service would in any way prejudice their defense to Plaintiff's allegations. Therefore, Plaintiff is granted 45 days from the date of this Order to effectuate proper service upon Defendants Fisher and Marks.

### C. *Failure to State a Claim*

■ Notwithstanding the insufficient service, Defendants Fisher and Marks argue that the Plaintiff has failed to state a claim that complies with Rule 8 of the Federal Rules of Civil Procedure, and therefore move this Court to dismiss the pleadings pursuant to Rule 12(b)(6). As stated *supra*, where a plaintiff is proceeding *pro se*, the Court must construe the pleadings liberally and "must 'interpret them to raise the strongest arguments that

they suggest.'" *Verley,* 2004 WL 526740, at *4 (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Thus, liberally construed, Plaintiff alleges that Marks and Fisher took part in a conspiracy to deny the Plaintiff his constitutionally afforded due process during his hearing with the OPMC.

Specifically, Plaintiff alleges that Marks, acting in a managerial role at the OPMC, "covered up multiple improprieties," which included "wrongful and willful encouragement of perjury" by Fisher, who acted in her role as a staff investigator for the OPMC. Second Amended Complaint ¶ 4. Plaintiff contends that this conspiracy effectively resulted in the unwarranted resolution of the hearing,[3] which lead to the loss of his ability to practice his livelihood as a medical doctor in the State of New York. Accepting these allegations as true, and viewed in light of the liberal pleading standards, the *pro se* Plaintiff has sufficiently stated a Section 1983 claim upon which relief may be granted. Therefore, Defendants Fisher and Mark's motion to dismiss with respect to this claim is DENIED, with Plaintiff being granted 45 days from the date of this Order to effectuate proper service.

## D. *Eleventh Amendment*

▆▆▆ In a final attempt to dismiss Plaintiff's allegations, Defendants Fisher and Marks argue that the Eleventh Amendment to the United States Constitution bars the Plaintiff from bringing a Section 1983 claim against OPMC officials in their official capacities. Defendants correctly note that an official-capacity suit against individual OPMC defendants would be the equivalent of a suit against the officials' OPMC office, i.e. the New York State Department of Health. *See Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Indeed, "[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983" *Id.* (quoting *Will,* 491 U.S. at 71, 109 S.Ct. 2304). However, "[p]ersonal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* "Thus, '[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" *Id.* (quoting *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) (alteration in original).

Defendants incorrectly assume that Plaintiff has attempted to pursue an official-capacity suit. Plaintiff alleges wrongdoing during the hearing and constitutional deprivation of due process; actions that are neither part of, nor derived from, the official position of the Defendants. As such, Plaintiff has sought a personal-capacity suit alleging that the Defendants abused their authority under color of state law, thereby inflicting injury on the Plaintiff. "We cannot accept the novel proposition that this same official authority insulates [the Defendants] from suit." *Id.* at 27, 112 S.Ct. 358.[4] Therefore, Defendants

---

3. Defendants argue that Plaintiff voluntarily signed a consent order to the OPMC resolution which included an agreement to his license being suspended. However, notwithstanding the order, defendants are in error if they put forth the notion that an individual's waiver of due process can be bargained away in a consent agreement procured through fraud and coercion, as alleged by Plaintiff.

4. Incidentally, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304 (quoting *Kentucky,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099). Hence, Plaintiff's demand for a reinstatement of his license and for permanent injunction against the dissemination

motion to dismiss pursuant to the Eleventh Amendment is DENIED.

## IV. *Defendant Bateman*

██ The Plaintiff's final cause of action lies against his former attorney, Alexander Bateman. In his reply memorandum to Bateman's motion to dismiss, Plaintiff concedes that he can offer no evidence of a conspiracy between Bateman and the OPMC officials to use state sanctioned power to deprive Plaintiff of due process during his trial. However, Plaintiff contends that there is circumstantial evidence of a "mutual benefit," of which Bateman was a beneficiary. The "benefit" Plaintiff alleges is that upon his attorney's alleged abandonment of the case, Bateman was able to relieve himself of his attorney-client duties for which Plaintiff had paid a $20,000 retainer. Plaintiff alleges that in return, the OPMC was able to realize a quick victory against the unrepresented Plaintiff. The court notes that Bateman, in his sworn affidavit, claims that it was actually Bloom who personally relieved him of his services because of a difference in litigation strategy regarding the OPMC proceeding. Plaintiff further alleges that by abandoning him on the eve of the OPMC hearing, Bateman performed a breach of contract, a state law offense. Plaintiff claims that there is diversity of citizenship and cites 28 U.S.C. § 1332 as the basis for this Court's subject matter jurisdiction.

██ Plaintiff's claims against Bateman essentially amount to allegations of professional misconduct rather than the deprivation of any constitutional right. Even if Plaintiff's allegation of conspiracy for Bateman to gain a "benefit" was construed to be a constitutional violation, such claim "would fail to state a claim under § 1983 because a lawyer is generally not consid-

ered to be 'a state actor 'under color of state law' within the meaning of § 1983.'" *Brooks v. New York State Supreme Court, Appellate Division,* No. 02–CV–4183, 2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) (quoting *Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). Furthermore, "Section 1983 'was enacted to redress civil rights violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys." *Id.* (quoting *Mitchell v. Cohen,* No. 90–CV–1836, 1990 WL 100254, at *1 (E.D.N.Y. Jun. 13, 1990)). Any complaints that Bloom may have about the alleged misconduct of Bateman should be addressed to the Grievance Committee of the appropriate State Appellate Division. *Id.* Therefore, the Section 1983 claim against Defendant Bateman cannot stand.

██ As to Plaintiff's allegations of breach of contract, because there is no federal question before the court concerning Defendant Bateman, this Court lacks subject matter jurisdiction to hear Plaintiff's claims. In his Second Amended Complaint, Plaintiff attempts to invoke diversity jurisdiction. However, Plaintiff alleges that his residence is located in Bay Shore, New York. In his sworn affidavit, Defendant Bateman alleges that he resides and works in the state of New York. Section 1332(a) provides that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy ... is between (1) citizens of different States." 28 U.S.C. § 1332. Because Plaintiff and Bateman are both New York residents, there is no diversity of citizenship. As such, this court lacks jurisdiction to hear Plaintiff's breach of contract claim, and therefore Defendant Bateman's mo-

over the internet of allegedly false information would not be barred by the Eleventh

Amendment, were this an official-capacity suit.

**744**

tion to dismiss pursuant to Rule 12(b)(1) is GRANTED.

*CONCLUSION*

For the reasons set forth herein, the Defendants' motions to dismiss are GRANTED, in part, and DENIED, in part. Plaintiff's claims under 42 U.S.C. § 1983 concerning Defendants ABNS, Novello, Bermas, Abeloff and Bateman, are DISMISSED, with prejudice.

Plaintiff's claim of breach of contract concerning Defendant Bateman, is DISMISSED, with prejudice. This Court denies dismissal as to Plaintiff's claims under 42 U.S.C. § 1983 concerning Defendants Fisher and Marks.

The Plaintiff is hereby GRANTED leave to effectuate proper service of process on the remaining Defendants, Fisher and Marks, within 45 days of the date of this Order.

SO ORDERED.